CHARLES M. WELLS, TAX COLLECTOR v. GEORGE H. McNEILL ET AL.

[48 South. 184.]

1. COUNTIES. *Courthouses. Taxation. Levy. Code* 1906, § 313.

Code 1906, § 313, empowering the board of supervisors in case a new courthouse be required to determine plans and contract for is erection, contemplates action under conditions wherein the board has power to raise funds to pay for the same, but is not a grant of such power.

2. SAME. *Limitation on rate of taxation. Laws* 1908, *ch.* 72, *p.* 56. *Code* 1906, § 324.

Laws 1908, ch. 72, p. 56, fixing the maximum rate of county taxation for the years 1908 and 1909, does not relate alone to taxa-

tion for current expenses, but applies to special levies as well
and limits taxes to be levied for the erection of a courthouse under
Code 1906, § 324, granting the board of supervisors power to make
a special levy of taxes for that purpose.

3. SAME. *Future taxes. Bond issues. Code* 1906, §§ 331, 333.

The only way the burden of future taxes can be laid on a county
is that prescribed by Code 1906, §§ 331, 333, providing for the
issuance of county bonds, in respect to which the electors have
a right to be heard; and a fund with which to pay for a court-
house cannot be levied to be paid in annual instalments, although
the sum to be paid any one year, taken with all other taxes, does
not exceed the statutory limit.

FROM the chancery court of Newton county.

HON. SAMUEL WHITMAN, Chancellor.

McNeill and six hundred and ninety-nine others, tax payers
of Newton county, appellees, were complainants in the court be-
low; Wells, tax collector of the county, appellant was defendant
there.   The bill sought an injunction restraining the collection
from complainants, and others similarly situated who would
join in the suit, of a special courthouse tax.   A preliminary in-
junction was granted; the chancery court refused to dissolve
the same on motion of defendant, but granted an appeal to the
supreme court from the decree over-ruling defendant's motion
to dissolve.   The facts are stated in the opinion of the court.

*Witherspoon & Witherspoon,* for appellant.

The demurrer should have been sustained on the ground that
the bill has no equity on its face.   The only pretense of an
equity is to restrain by injunction the collection of a four and
one-half mill tax levied for the purpose of building a court house.
The general rule is that a court of equity cannot interfere with
the collection of the public revenues by injunction.   The rem-
edy of the tax payer is to pay the illegal tax under protest, and
then sue to recover it back, or to sue the tax collector for tres-
pass when he seizes the tax payer's property to enforce the pay-
ment of the tax.   If the tax be illegal, he can recover the prop-
erty destrained by replevin; but he can only resort to equity

where the proceedings of the tax collector will cast a cloud upon his title, or there is some ground of equity jurisdiction outside of the illegality of the tax.   The only modification of this rule is found in the section of the code which provides that the chancery court shall have jurisdiction of suits by one or more tax payers to restrain the collection of any taxes "levied on or attempted to be collected without authority of the law." Code, § 533.   And unless the four and one-half mill tax involved in this case was "levied or attempted to be collected without authority of law," then there is no equity on the face of the bill.

The words of the statute, "levied or attempted to be collected without authority of law," being in derogation of a well established rule laid down by the courts must be strictly construed, and cannot be construed to embrace any case which does not fall literally within its terms.

Code 1906, § 324 provides that the board of supervisors may levy a special tax for the erection, etc., of the court house. Therefore, the bill shows that the levy of the tax was not only not "without authority of law" but was authorized by an express statute.   It shows that the levy was made by the board, the very tribunal which the statute authorizes to make the levy.   It shows that the levy was made at the September term of the board, which is the time and the only time fixed by law at which the levy could be made.   It shows that the total amount of all the levies made by the board, including the state tax was eighteen mills, and that the law of 1908 expressly authorizes the board to levy as much as eighteen mills, so that the levy is legal so far as the amount of it is concerned.   The bill shows that the levy was made for the purpose of erecting a court house; and this is the very object and purpose for which section 324 expressly authorizes the levy to be made. . How then can it be said that the levy was "without authority of law?"   In what respect was it "without authority of law?"   It be said that it was "without authority of law" as to the time it was

made, or as to the tribunal that made it, or as to the amount of it, or as to the object of it, the statute section 324 answers the argument, and shows that the levy "was with authority of law" in all these respects; and the bill affirmatively shows that every feature and element of the levy was expressly authorized by statute.

And if the levy was not "without authority of law" how can it be said that the appellant was attempting to collect the taxes "without authority of law." The bill shows that the collector is fortified with an assessment of which there is no complaint; that he is the tax collector of the county; that he only threatens to use the "ordinary methods" for the collection of the taxes; and if, as we have shown, the levy authorized be by law, then it cannot be said that the appellant is attempting to collect the tax "without authority of law."

But the bill further charges that the board also advertised for bids for the construction of the court house to be opened on January 4, 1909, and that the board proposes to make a contract for the erection of the court house to cost at least $30,000, and that this debt, together with all the ordinary expenses of the county will exceed the twelve mill levy, and that the board proposes to pay for the court house by accumulating a fund by successive annual levies from year to year, and that it is not authorized to contract a debt for a court house, which, together with the current expenses will exceed the total revenues of the county The whole complaint of the bill is founded on the mistaken idea that in the order made by the board at its May term 1908 the board provided that the court house should cost at least $30,000.

The theory of the bill is not that the four and one-half mill tax was "levied without authority of law" nor that it is attempted to be collected without authority of law, but that the $19,709.05 collected by the four and one-half mill will be used in paying for a court house, and that the board will have agreed to pay more than $19,709.05 for the court house, and that in.

contracting a debt for the excess over this sum it will exceed its
authority. This is the real complaint of the bill, and, as we
have stated, the orders of the board do not show this to be true..

But if for the sake of argument we concede that it is true,.
and that the board will enter into a contract for a court house
to cost more than $19,709.05, what would this prove? Would
it prove that the board could not legally levy and that the tax
collector could not legally collect the $19,709.05 or would it
prove that at some time in the future the board would make a.
contract to build a more costly court house than the law au-
thorizes. If the board intends to make a contract for a more
costly court house than the law authorizes, then we submit that
the remedy for the unlawful act would be to appeal to the cir-
cuit court from the order making the contract; but it is a gross
perversion of language to say that, because the board intends to
make a contract to pay more for a court house than the law per-
mits, therefore, the levy and collection of the tax, legal in every.
respect, and expressly authorized by the statute was "levied or
attempted to be collected without authority of law." If the
four and one-half mills is all that the board is authorized to
levy for the erection of the court house, and if it cannot next
September levy another tax to complete the payment for the
court house, then the tax payer can either prevent the board
from entering into such a contract, and force it to build a court
house costing not more than $19,709.05, or else, when it at-
tempts to levy another tax to complete that payment if such
levy is without authority of law, the tax payer can under
Code 1906, § 324 enjoin the collecting of such a tax; but
merely because the board intends to contract a larger debt than
it has authority to contract, or because it expects to levy an
illegal tax next September, is no reason to contend that a tax
levied last September, which is legal in every respect, was
"levied or attempted to be collected without authority of law."

The board has the authority to make the very contract which
the bill complains that they intend to make. The board had
unlimited power to make contracts for the erection of court

houses.   Code 1906, § 313 provides that if a new court house shall be required in any county, the board shall determine the material, the dimensions, and the plan thereof, and may make the necessary contracts for the erection and for the furnishing of the materials, and may appoint commissioners to superintend the same.

The only limitation on the power of the board to make such a contract is that a court house shall be required, and the board is the sole judge of this.   It had decided that the present court house of Newton county is inadequate to the needs of the county and for the preservation of the records, and there is not even an intimation in the bill that the present court house is adequate to the needs of the county and for the preservation of the records or that a new court house is not required.   Therefore if the statute is to be upheld, the board has the right to determine the material, whether of wood, brick, cement or stone, and the dimensions, whether of one or five stories high, and the plan, whether it calls for one or five hundred thousand dollars, and to make the contract for the erection of the house out of the materials and of the dimensions and according to the plan determined upon by the board.

The petition of the appellees is that the court should read into Code 1906, § 313 the limitation that the contract price of the new court house with the current expenses of the county shall not exceed the total amount of taxes that will be produced by a twelve mill levy.   If the legislature intended this, why did they not say so, and on what principle can the court add to or detract from the plain and unambiguous terms of the statute?   *Anderson v. Ingersoll,* 62 Miss. 73; *Noxubee County v. Adams,* 3 South. 37, 19 South. 589; *Railroad Co. v. Adams,* 73 Miss. 648, 19 South. 91.

*J. D. Carr, J. D. Jones, G. H. Banks, W. J. Munn, Flowers & Whitfield* and *McWillie & Thompson,* for appellees.

If the special levy for court house purposes was illegal and could not authorize the appellant as tax collector to require

payment of the four and one-half mills he was demanding on that account, then the ground of want of equity on the face of the bill for injunction filed by the tax payers needs no further answer.

In the present controversy it will be noted that while the board has approved a plan and specifications calling for a $30,000 court house, none has yet been built nor has any contract for the building of one been entered into. The special levy is but a partial execution of a scheme to build by successive annual levies a fund sufficient to pay for a court house of the cost indicated by the approved plan. No debt on account of the erection or repair of a court house exists to sustain the special levy nor is there in existence any contract for the erection of a court house the performance of which would create an indebtedness of the county. While it has not yet entered into the same the board contemplates making a contract for a $30,000 court house and incurring a debt for which there is no warrant in the law, and the special levy under discussion is therefore simply an illegal provision for meeting in part an obligation that the board is without power to impose upon the county. The levy must be attributed to the purpose of the board as indicated by its proceedings. The order looking to the advertisement for plans and specifications calls for a new court house building to cost between $30,000 and $50,000. The plans and specifications of Hull were, as shown by the bill, approved and adopted for a building to cost between $30,000 and $50,000 and bids were invited by advertisement for the erection of a building according to the Hull plan and specifications. It was either a special levy to build a court house costing not less than $30,000 or it was a special levy for purposes wholly undisclosed, and the board is certainly without power to make special levies merely to accumulate funds for subsequent exploitation.

Treating the levy as but part of a scheme to fix a $30,000 court house debt upon the county we can see no reason for

doubting that it is utterly illegal under the able decision rendered by this court in *Monroe County v. Strong,* 78 Miss. 565, 29 South. 530.

The bill makes precisely the case that was passed upon in *Monroe County v. Strong, supra,* where this court plainly pointed out the illegality of making contracts which create large debts to be provided for in future years and which could not be provided for at the time without exceeding the limit prescribed by law. If the contract is unlawful, surely the levy which is in anticipation of the contract is unlawful.

There is nothing in the case of *Beck v. Allen,* 58 Miss. 143, to support the demurrer in this case. Although the two judges who constituted a majority of this court had somewhat diverse views as to the interpretation of Sec. 16, Art. XII Const. 1869, they united in the conclusion that it was within the power of the legislature to limit county taxation even in respect to the subject of jails, ferries and bridges, as to which the supervisors were given full jurisdiction.

The opinion in the *Strong case* calls attention to the fact that the above section of the constitution of 1869 was not carried forward into that of 1890, and that the latter unquestionably leaves to the legislature the manner in which the power of the board shall be exercised, including all proper limitations.

Under existing conditions in Newton county there is no way in which the erection of a county courthouse can be provided for without a bond issue under the code sections authorizing the same, and the issue of bonds has been submitted to the electors of the county and overwhelmingly voted down. Otherwise the case is almost identically like the *Strong case,* there being a strong public sentiment against the project of a new courthouse, and two of the five members of the board voting steadily against every measure looking to its erection.

There can be no doubt of the jurisdiction of the court to entertain the bill under Code 1906, § 533 and it is idle to quibble over the words "without authority of law" as used in reference

to taxes levied or attempted to be collected. Whenever the supervisors exceed their power in making a levy it is "without authority of law," and whenever the tax collector is attempting to collect a tax so levied we have the same state of case.

The appellant takes the wholly indefensible position that if a contractor can be found to agree to take payment for a $30,000 courthouse in deferred payments from year to year a valid levy can be made on account of the courthouse debt up to the limit imposed by law. It will be observed that this view leaves the board absolutely unfettered as to the amount of debt to be incurred on account of a courthouse and if it should see fit to do so it can contract for a courthouse of such large cost that a hundred years would be required to pay for the same by special levies within the maximum allowed by law.

In considering the power of the board in this regard it is immaterial whether a contract has been actually made for a $30,000 courthouse or whether it is only a contemplated one of which the special levy of four and one-half mills is predicated. In either case we are confronted by a county debt of unlimited magnitude.

Code 1906, § 313, must be construed with reference to the other provisions constituting our revenue system and defining the powers of the board of upervisors. The duty is imposed by this section upon the board of supervisors of prescribing the materials, the dimensions and the plan of the courthouses and jails and it is designated to make the contracts for such structures that shall bind the county and to appoint one or more commissoners to superintend the work, etc.; all of which should be taken as relating to a state of case where a new courthouse had not only been decided upon but where bonds were authorized or where the building could be paid for by a single levy within the maximum allowed by law. The harmony of the whole system would be destroyed if we gave Code 1906, § 324, any other construction than that which limits the special levy authorized by the section for courthouses, jails and other county buildings

to a single levy within the prescribed general limitation. It is. of the very essence of the *Strong case* that "the scheme of county finances is annual in its nature," and that the board of supervisors are without power, knowingly and intentionally to make contracts which create large debts to be provided for in subsequent years.'' Certainly if the legislature had intended by sections 313 and 324, to revolutionize the scheme of our law as thus defined it would have employed plainer terms than we find in those sections.

EDWARD MAYES, Special Judge,* delivered the opinion of the court.

The bill in this cause shows that the board of supervisors had levied a tax of four and one-half mills for the purpose of erecting a new courthouse; that such levy, added to the other levies made, aggregated the full tax authorized by the act of 1908 (Laws 1908, p. 56, c. 72), being eighteen mills; that the board had advertised for proposals to build the new courthouse, on the basis of a structure to cost not less than $30,000 nor more than $50,000 and were about to contract on that basis; that a proposal to issue bonds had been rejected by the people; that the four and one-half mills levy would yield only $19,000; and that therefore the excess of cost over that sum would have to be paid out of levies made in future years. Wherefore the tax is unlawful, and an injunction was obtained against the tax collector. A demurrer to this bill was overruled, and from that order the tax collector prayed this appeal.

The effort on the part of the appellant is to distinguish this case from the decision in *Monroe Co. v. Strong,* 78 Miss. 565, 29 South. 530. It is said that sections 313 and 324, of the Code of 1906 control, and lead to a different result, since here-

---

* FLETCHER, J., being disqualified to preside in this case, because of his connection with the controversy while attorney-general, recused himself, and EDWARD MAYES, ESQ., a member of the supreme court bar,. was appointed to and did preside in his place.

the question is of a courthouse, while there is was a bridge. The sections so relied on are as follows:

"313. *Shall Remodel, Repair and Erect Courthouse and Jail When Necessary.*—If a new courthouse or jail shall be required in any county, or if the courthouse or jail shall need remodeling, enlarging, or repairing, the board of supervisors shall determine the material, the dimensions, and the plan thereof, and may make the necessary contracts for the erection, remodeling, enlarging, or repairing thereof, and for furnishing the materials, and may appoint one or more commissioners to superintend the work as it progresses, who shall take care that the proper materials are furnished, and the work faithfully performed according to contract, and who, for their services, shall receive a reasonable compensation."

"324. *May Levy Special Tax.*—The board of supervisors of any county may levy a special tax for the erection, remodeling, enlarging or repairing of the courthouse, jail or other county buildings, and the order making such special levy shall designate the objects for which the levy is made, and the fund shall be applied to no other purpose."

It is contended that section 313, by necessity, gives the board incidentally the power to fix the cost of a courthouse, and that such power is beyond the reach of the courts by way of review. That is true; but the power to contract there conferred has reference only to the contract to build, with the secondary contracts auxilliary thereto. The section means exactly what it says, and no more than what is necessarily included. It has no aspect towards the ways and means for payment, nor to any matter of taxation. Section 324 does not deal with the power to tax. But that power was not a vested right in the board, and was subject to legislation. We understand the restriction laid by the act of 1908 (Laws 1908, p. 56, c. 72) to be, just what its terms most simply express, mandatory and general that in no case shall the state and county levies exceed eighteen mills in any one year. This prohibition includes those levies called

special, and those for extraordinary purposes. It is not by construction to be limited to a prohibition of heavy current and annual expenses only. The courthouse tax authorized by scciton 324 is a special tax, because, when levied, the proceeds are applicable to that purpose alone; but, because it is special, it is not therefore freed from the limitation fixed by the salutary law of 1908.

But it is said that the levy made in this instance is lawful, because it, taken with all other levies, does not exceed eighteen mills; that it is within that limit. This is true; but also it is true that the proceeds of such levy will not pay for the courthouse, even if the contract be placed at the minimum of $30,000. There must as an admitted fact, be a shortage of over $10,000, which, if paid at all, must be met by some future levy. This course is not permissible under these statutes. The only way in which a burden of future taxes can be laid on the people is that prescribed by section 331, which provides for the issuance of courthouse (and similar) bonds, but reserves to the electors the right to express their will by an election. It might easily happen that the values of a county are so large and its current expenses so small by comparison that one year's special tax at a rate within the limit fixed by the act of 1908 would raise the amount needed for a new courthouse. In such case there would be no need of a bond issue or for an election. But, if it be proposed to raise an amount which will involve a need for future taxation, the bonding scheme of section 331 must be employed.

The order of the chancellor overruling the demurrer to the bill is therefore affirmed, and cause remanded, with leave to answer within sixty days.

*Affirmed.*