BOARD OF SUP'RS OF ATTALA COUNTY *v.* ILLINOIS CENT. R. Co.

(Division B. June 5, 1939. Suggestion of Error Overruled July 7, 1939.)

[190 So. 241. No. 33740.]

J. D. Guyton, of Kosciusko, for appellant.

298

D. E. & J. T. Crawley, of Kosciusko, May & Byrd, of Jackson, C. H. McKay, of Memphis, Tenn., and R. C. Beckett, of Chicago, Ill., for appellee:

Argued orally by **J. D. Guyton** for appellant, and by **J. T. Crawley**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

On November 10, 1938, the Board of Supervisors of Attala county passed an order levying taxes for the fiscal year 1938, by which, among other items, a tax of one mill was levied on all the taxable property, including homesteads as defined by H. B. No. 2, Special Session of 1938, for the support of paupers and county homes; on January 30, 1939, the railroad company paid its taxes under protest, and on the 6th of March, 1939, filed a petition for a refund of the one mill tax levied for the support of paupers, claiming that levy to be in excess of

the limit allowed by law, and therefore void. The Board of Supervisors on the same day entered its order denying the claim. A bill of exceptions was taken and signed, appealing the case to the Circuit Court on the order denying the refund, and on the 7th day of March, 1939, the Circuit Court entered its order, reversing the Board of Supervisors, and entering judgment against the county in favor of the railroad company in the sum of $240.47; from which judgment this appeal is prosecuted.

The statute involved in the litigation here is section 2 of chapter 104, Laws of 1932, the pertinent part of which section reads as follows: ''The Board of Supervisors of any county is hereby empowered to levy ad valorem taxes on the taxable property in the respective counties in any one year for all general county purposes, exclusive only of levies for roads and bridges and schools, at the rate herein specified, but not in excess of the following amounts: . . . In counties having an assessed valuation of $3,000,000.00 and less than $8,000,000.00 . . . Provided, however, that counties having an assessed valuation of less than $8,000,000.00 and having no bonded indebtedness shall be allowed to levy one additional mill for the purpose of maintaining a full time health unit.''

Section 3 of the act authorizes a levy of seven mills for roads and bridges, and section 4 authorizes a school tax levy. Sections 5 and 6 are in regard to municipal levies; section 7 deals with levies for schools, roads and bridges; section 8 is in regard to rural school districts; and section 9 provides that ''The limitations fixed by the foregoing sections shall not apply to any levy made for the payment of indebtedness with interest thereon, nor to special taxes for drainage, levees, sidewalks or street improvements, when such taxes are assessed against particular property.'' Section 10 provides that ''Any member of a board of supervisors or aldermen or city commissioners who shall vote to impose a tax levy in excess of the limits as fixed by this act shall be deemed

guilty of a misdemeanor,'' and is punishable as such; and section 11 repeals all laws in conflict with the chapter.

It is said that the court below considered this case to be controlled by Illinois Cent. R. Co. v. Board of Sup'rs of Attala County, 137 Miss. 408, 102 So. 265, in which case the petition for refund of the taxes filed with the county by the railroad company alleged that the Board of Supervisors had assessed it with an ad valorem tax levy of 8 mills, and in addition with a one mill ad valorem levy for pauper support and a half-mill ad valorem tax for repair and maintenance of the courthouse; that these taxes were duly paid by it; but that the one and one-half mill taxes above referred to, amounting to $1,203.91, were paid under protest to the tax collector of the county, the protest being duly noted on the margin of the tax receipt; and that this one and one-half mill levy was in excess of the amount the board was authorized to levy, and the petitioner was entitled to have this amount refunded.

The tax levy statute for limitation of the amount of taxes to be levied, involved in this decision in 137 Miss. 408, 102 So. 265, supra, was chapter 114, Laws of 1922, which provided for a state ad valorem tax of 8 mills; and in section 2 of the act it was provided that: ''Boards of supervisors of the various counties may levy taxes for all purposes,. exclusive of county and district road tax, common school tax and agricultural high school and other school tax, at a rate not exceeding eight mills on the dollar.'' The tax there involved was governed by this statute which provided for a limitation of taxes ''for all purposes,'' and excluded certain taxes from this limitation on the amount. In that case it was conceded by the attorney general that the phrase, ''for all purposes,'' prohibited the levying of a tax for the support of paupers or poor homes; and the question under consideration by the Court principally turned upon the requirements for a refund.

In our opinion there is a material difference between the phraseology of the present act, chapter 104, Laws of 1932, and that of chapter 114, Laws of 1922. The latter statute used the language, "may levy taxes for all purposes," etc., excluding specific named taxes. The words "all purposes of course included both general and special purposes. We must attribute to the legislature a purpose in changing the language of statutes, and assume that they used the changed language designedly, to accomplish some purpose. The words in the present statute, "for all general purposes," would exclude from the limitation taxes for special purposes, and taxes not applicable to the county as a whole—that is, local or district taxes.

Mr. Black, in his Law Dictionary, defines the word "general" as follows: "Pertaining to, or designating, the genus or class, as distinguished from that which characterizes the species or individual. Universal, not particularized; as opposed to special. Principal or central; as opposed to local. Open or available to all, as opposed to select. Obtaining commonly, or recognized universally; as opposed to particular. Universal or unbounded; as opposed to limited. Comprehending the whole, or directed to the whole; as distinguished from anything applying to or designed for a portion only." We think that as here used, it is in the sense of being opposed to special or local, or both.

In construing a statute we, of course, take into consideration all statutes pari materia. By section 5701, Code of 1930, the board is authorized and directed to annually assess and cause to be collected by the tax collector, and paid into the county treasury, such tax as may be necessary for the support of the poor of the county. While the legislature could impose reasonable limitations upon the amount levied by the Board of Supervisors, it could not destroy the power of the Board to make a levy for this purpose, for the reason that the Constitution of the state confers power upon the Board of Supervisors to

provide homes or farms as asylums for those persons who by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of the public, under section 262 of the Constitution of 1890. The giving of power by a constitutional provision carries with it, by implication, the right to do the things necessary and appropriate to make the power effective; and the power to provide homes or farms for the poor or the aged or the unfortunate, named in the Constitution, will carry with it, by necessary implication, the right to provide funds for these purposes. The constitutional provision would not be restricted to narrow meanings, but would be construed reasonably to accomplish the purpose therein announced. But in our judgment the legislature has not undertaken to repeal section 5701 by the limitations imposed by chapter 104, Laws of 1932. Section 5701 provides a levy for a special purpose, for the benefit of a named class of persons, and not for the benefit of the general public. The tax there levied is for a special purpose, and for a designated class of persons, less than the entire population of the county.

Section 214, Code of 1930, gives the Board of Supervisors general jurisdiction over roads, ferries and bridges, except as provided by section 170 of the Constitution, and all other matters of county police; and jurisdiction of paupers; and they are given by this section power to levy such taxes as may be necessary to meet the demands of the respective counties, on such persons and property as are subject to state taxes for the time being, not exceeding the limits that may be prescribed by law. The legislature, of course, has a right to prescribe the taxes within reasonable limits, even where the taxing power is given by the Constitution, and where it is given by the legislature itself, of course, it may control the amount to be levied and imposed upon property for a particular year. But this section 214 is not exclusive of others, and by section 231 a Board may levy special taxes for the purposes named therein; and provides that

where making such special levy the object for which the levy is made shall be designated, and the funds shall be applied to no other purpose. Of course, the tax levied under this section does not go into the taxes for general county funds. Sections 231, 232, Code of 1930, provide for a special tax, and that when such special tax is levied for county purposes, the Board may require the tax collector to give additional bond.

In the case of County Board of Education v. Austin, 169 Ark. 436, 276 S. W. 2, 5, the Supreme Court of Arkansas had occasion to discuss the "county general fund," an expression we think equivalent to general county fund, or general county purpose. The question there involved was the payment of certain funds collected by certain officers, in excess of fees, into the county treasury, to the general county fund. And certain funds collected by such officers, belonging to the school fund, and paid into the treasury, were about to be paid into the treasury, to this county general fund. In discussing the meaning of the term, the Court said: "The fund raised by taxes, not exceeding 5 mills on the dollar for all county purposes, or the 'county general fund,' is what its name imports—a fund raised to meet the expenses incident to county government, a county general fund—and is altogether a different fund from the school fund of the county. See section 9863, C. & M. Digest; 15 C. J., p. 583, section 284. The Legislature is wholly without power to command that fees, emoluments, and commissions, allowed for the collection and handling of school funds by the county officers, be covered into the county general fund. [Citing authorities] Such fees, emoluments, and commissions, when paid into the treasury, should go to the credit of the school fund, to be used for school purposes and no other. Section 17 [of said act] is unconstitutional, because it plainly authorizes a diversion of the school funds into the county general fund, where it could be used for other than school purposes."

Our own Court had before it, in Coulson v. Harris, 43

Miss. 728, a question similar to what we are now called upon to decide. It was there held that the provision of the Code then in force, authorizing the boards of police of several counties to raise revenue for the support of the poor, and a general statute authorizing the Board to raise revenue for general purposes, are distinct and independent statutes, and the tax contemplated by the former—that is, for the support of the poor—may be levied and collected, notwithstanding that the power conferred by the later act may have been exhausted. In the act there involved, article 16, c. 59, page 416, Rev. Code 1857, provided that ''They shall have power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to State taxes for the time being, not exceeding the amount of the State tax.''

By article 22, c. 59, page 417, Rev. Code 1857, it is provided, ''The board of police of any county may levy a special tax for the erection or repair of the court-house, jail, or other county buildings, and bridges, whether the same shall exceed the State tax or not, to be applied to no other purpose;'' and also article 2, c. 23, page 210, Rev. Code of 1857, which provides: ''The boards of police shall have power annually to assess, and cause to be collected by tax collectors, and paid into the county treasury, such tax as may be necessary for the support of the poor of their respective counties, and for the purpose of purchasing not exceeding fifty acres of land, and building thereon a poor house for the county.''

In the course of the opinion in Coulson v. Harris, 43 Miss. 728, at page 736, the Court said: ''It is insisted by counsel for the appellant that the tax for the poor fund was included in the tax for county purposes, and that the twenty-five per cent. on the state tax for the poor fund was, therefor, improperly assessed. We cannot concur with counsel in this view of the law. The act for the humane and benevolent purpose of relief and support of the poor, provides that the boards of police shall have

power to assess and cause to be collected by the tax collectors, such tax as may be necessary for the support of the poor in their respective counties [citing Code section]. This is a separate and distinct law from that which confers power on the boards of police to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the amount of the state tax. Rev. Code, 416, art. 16. It is manifest that the taxes to be raised under these acts are for distinct and different purposes. The boards of police, in accessing taxes for the support of the poor, are not limited in their assessments to the amount of the state tax; but in assessing a tax for county purposes proper, the boards of police are limited in their assessments to the amount of the state tax. We, therefore, think that the taxes for the support of the poor, are not included in the taxes levied for county purposes, and that the assessment of twenty-five per cent. on the state tax, to raise a fund for the beneficent purpose of sustaining the poor, is authorized by law."

It is urged upon us that in Wells, Tax Collector v. McNeill, 93 Miss. 407, 48 So. 184, the Court held that chapter 72, Laws of 1908, page 56, fixing the maximum rate of county taxation for the years 1908 and 1909, does not relate alone to taxation for current expenses, but applies to special levies as well and limits taxes to be levied for the erection of a courthouse under Code 1906, section 324, granting the Board of Supervisors power to make a special levy for that purpose.

The statute there involved, imposing the limitation on the amount of tax, provides: "Boards of supervisors may levy taxes for all purposes which, added to the State tax, will make sixteen (16) mills on the dollar for the year 1908, and sixteen (16) mills on the dollar for the year 1909, and no more. Provided That counties may levy an additional tax of not exceeding two mills on the dollar, to provide funds to maintain the public schools." Laws

1908, c. 72. And the Court there held that this tax for all purposes included both special and general county taxes, and altogether could not exceed the 18 mills provided in the statute.

It will be noted that the language "for all purposes," is the same as that in the act of 1922, above quoted. It does not use the term "for general county purposes." It is true that the Code authorized special taxes then as now, for certain purposes.

We are of the opinion that the limitation imposed for general county purposes does not include a tax levied under section 5701, for the special purpose of caring for the poor, the aged and the unfortunate. Consequently, the court below was in error, and the judgment will be reversed, and judgment rendered here for the county.

Reversed and rendered