### John H. Moores v. Stanley O. Thomas.

#### [48 South. 1025.]

1. Taxation. *Land. Assessment. Description. Tax deed.*

   A description of land, in an assessment for taxes and in a tax deed, as W. ½ X N. W. ¼ and S. E. ¼ X N. W. ¼, giving section, township and range, is sufficient and describes the west half of the northwest quarter and the southeast quarter of the northwest quarter of the section; the custom being almost universal to omit the "of", and it is allowable to disregard the "X".

2. Same. *Two tracts. Separate ownership. Assessment in solido.* Code 1892, §§ 3772, 3774, 3775, 3787, 3817, 3824, 3853. Code 1906 §§ 4281, 4283, 4284, 4296, 4332, 4339, 2936.

   Under the provisions of the revenue statutes, pertinent thereto, the assessment *in solido* of two tracts of land belonging to different persons, as the property of an unknown owner, is not invalid.

From the chancery court of Harrison county.

Hon. Thaddeus A. Wood, Chancellor.

Moores, appellant, was complainant in the court below;

Thomas, appellee, was defendant there. From a final decree in defendant's favor the complainant appealed to the supreme court.

The object of the suit was to confirm a tax title. Complainant purchased the land from the state, and the state acquired the same at a regular state and county tax sale in 1893 for the taxes of 1892. The facts upon which the controversy turned are stated in the opinion of the court.

*T. S. Howell,* for appellant.

Descriptions of lands by abbreviations and symbols, such as were used in this assessment, are well known and understood, and in universal use among the population of this state.

"It is settled that abbreviations are admissible in describing land, and it is well known that they are very commonly used." *Bowers v. Chambers,* 53 Miss. 259; *McCready v. Lansdale,* 58 Miss. 877; *Harvard v. Day,* 62 Miss. 748.

The authorities collected in 1 Am. & Eng. Ency. of Law (2d ed.), 101 and notes, show that the use of abbreviations and symbols in conveyance is general throughout the country and upheld by the courts.

The tracts were not given in to the assessor by any person, but were valued by him at an aggregate valuation. There was no evidence of a difference in the value of the different parcels. Nor were they geographically separated. On the contrary they were all parts of the same quarter section and contiguous.

It is the duty of the owner or person having possession or charge of lands to give them in for assessment, and it is presumed that he will do so. But provision is made by Code 1892, § 3772, Code 1906, § 4281, for the assessor to make the assessment for the owner in case of his failure.

Code 1892, § 3775, Code 1906, § 4284, settles the validity of the assessment in the case at bar, and it being admitted that the sale based thereon was properly conducted and made on the

right day, the title of the state by virtue of its purchase was good and valid, and the title of appellant, derived from the state, should have been confirmed and quieted against appellees.

*Money & Graham,* for appellee.

First. The assessment and sale are void because of the vague, indefinite, uncertain and insufficient description of the land attempted to be assessed and sold.

Second. The sale was void and conveyed no title because the west half of the northwest fourth, then owned by the appellees, and the southeast fourth of the northwest fourth then owned by some person unknown, were assessed together and *in solido* and as one assessment by the tax assessor of said county, in the year 1892, at one valuation, and so sold.

The authorities from Mississippi and other states, cited in appellant's brief to sustain the sufficiency of the description in the assessment roll in question, do not sustain that description; they merely hold that "NW", for example, was a sufficient abbreviation for "north west"; and that "¼" was a sufficient abbreviation for "one fourth" or "one quarter", and approve the general doctrine that well known abbreviations may be used in conveyances and tax proceedings; but on the contrary, all the authorities which have had this particular description under consideration have condemned the description in question as being insufficient. Black, Tax Titles (2d ed.) sec. 114; *Powers v. Larrabe,* 49 N. W. 724; *Powers v. Bowdle,* 3 N. Dak. 107, 54 N. W. 404; 21 L. R. A. 328, 44 Am. St. Rep. 511; *Sheets v. Paine,* 10 N. Dak. 103, 86 N. W. 117; *Lee v. Crawford,* 88 N. W. 97; *Van Cise v. Carter,* 68 N. W. 539; *Turner v. Hand Co.,* 11 S. Dak. 348, 77 N. W. 589; *Moran v. Thomas,* 104 N. W. 212; *Keith v. Hayden,* 26 Minn. 212, 2 N. W. 495; *Tidd v. Rines,* 26 Minn. 201, 2 N. W. 497; *Lawrence v. Fast,* 20 Ill. 339, 71 Am. Dec. 274; Ballard, Law Real Property, vol. 3, sec. 729.

The description is also deficient in this, that the sign "X"

and not the word "of" is used. "X" is not equivalent to "of" as a sign or abbreviation. If it means anything it means "by."

Code 1892, § 3774, Code 1906, § 4283, under which the assessment and sale were made, required the assessor to proceed numerically with all the sections, townships and ranges in his county, first setting down all the subdivisions of each section, if they belonged to different individuals; the court will take judicial notice of what a subdivision is under the land laws of the United States, to wit, forty acre tracts, and Code 1892, § 3813, Code 1906, § 4328, provides for sale by forty acre tracts.

Code 1892, § 3774, further provides that the whole section might be assessed together, if owned by one person, and further, that if the owner of any land be "unknown, it shall be assessed to unknown." The disposal of the public lands in forty acre, eighty acre, one hundred twenty and one hundred sixty acre tracts by the government, by long-established practice, so that such practice has become a matter of common knowledge, furnishes a reason for the legislature prescribing as it does in section 3774, *supra,* that the assessment should be separately of the forty acre subdivision, if belonging to different individuals, or if belonging to one individual, the whole section, or any part of it, of course, together; the intent of the legislature being that the separate forties, which might belong to two individuals, or more, should not be assessed together and so that each may pay his individual tax on his individual forty.

In the present instance the assessor said by his assessment, on his roll, that he did not know who was the owner of the lands above referred to, or of any particular forty of it; therefore, he did not know, affirmatively, that all three of said forty acre tracts belonged to one individual, and he therefore had no legal right, or any reason, to assess the same in one assessment to one individual, to wit, "Unknown." He could only assess them in one assessment to one individual in the event he knew they all belonged to one individual. He said by his assessment that the owner or owners were "Unknown," and for this reason he should

have assessed each of said forties separately to "Unknown," in order to comply with the reason and intent of said section 3774.

In order to show that said assessment and the sale under it are void, it is only necessary to reason the matter to its conclusion, viz: these three forties were assessed to one person to-wit: "Unknown," although owned by different individuals; if the word "Unknown" means two or three separate owners, then the assessment is invalid because it includes two or more properties of different individuals in one assessment, which is equally illegal; the presumption then is that the tax collector at the sale offered one forty for the entire tax on all, then added another forty and offered the two for the entire tax, then added another forty, and offered the three for the entire tax, for which they were struck off to the state, and the separate owners thus had no opportunity to pay his individual tax on his land without paying the tax on that part he did not own. The laws, although the proceeding is against the land, require each parcel to be assessed to its proper owner if known (provided all lands owned by the same owner in the same section may be assessed in one assessment), or to "Unknown," if not known. Manifestly it is improper to assess two tracts, owned by two known owners, in one assessment. Therefore if the owners of two tracts are unknown, they should not be assessed to one unknown. When the assessor assessed the three forties in this instance as belonging to "Unknown" or unknown owners, he said thereby that he did not know whether there was one or two owners; *i. e.* he did not know anything about it. Under these circumstances he could have easily made a correct assessment by assessing each forty separately to "Unknown."

A sale of two tracts of separate owners, assessed together, would be requiring one owner to pay an excessive tax, or lose his property, and such proceedings are for that reason also void. *Green v. McGraw,* 72 N. E. 1049, 73 N. E. 832; *Dickinson v. Arkansas City, etc., Co.,* 92 S. W. 21; *Kirker v. Daniels,* 83 S. W. 912; *Harvey v. Douglass,* 92 S. W. 946.

Separate parcels must be separately assessed whether contiguous or not, when owned by different persons. Black, Tax Titles (2d ed.), sec. 102; *City v. Stewart,* 90 S. W. 49; *State Finance Co. v. Beck,* 109 N. W. 357; *Howcott v. Bd. Comrs.,* 14 South. 848; *George v. Cole,* 33 South. 784; *Waggoner v. McManus,* 36 South. 332.

The assessment of a joint tax on two parcels of land belonging to two owners, based on a joint valuation, creates no lien for the whole or any part of the tax. Black on Tax Titles, sec. 102.

The rule applies with greater force to unknown owners. Ibid.

MAYES, J., delivered the opinion of the court.

There are two contentions in this case on the part of appellees. The land in controversy, one hundred and twenty acres, was the subject of different ownership at the date of assessment and sale for taxes; eighty acres being owned by one person, and the remaining forty by another. The whole tract was assessed together as "Unknown," and described as the "W. ½ X. N. W. ¼—S. E. ¼ X. N. W. ¼." It is argued that this assessment is void, because the description is insufficient; and, if this contention be not sound, then it is argued that the assessment and sale was void, because the assessment was *in solido,* and it is asserted that under section 4283, Code 1906 (section 3774, Ann. Code 1892), an assessment to "Unknown" must comprise only forty acres.

The almost universal practice is to omit the "of," and the "X" may be disregarded. The description of the land by abbreviation commonly used on the roll, as shown by the pages in the transcript, leaves no doubt that the one hundred and twenty acres known as W. ½ of N. W. ¼ and S. E. ¼ of N. W. ¼ were assessed. The argument that, because the eighty acres and the forty acres belonged to different owners, the assessment was void, is not sound. The direction as to how the roll is to be made up by section 4283, Code 1906 (section 3774, Ann. Code 1892) is merely directory, and non-

observance did not vitiate the assessment. Sections 4284, 4332, Code 1906 (sections 3775, 3817, Ann. Code 1892), declare what, and only what, shall invalidate a sale for taxes.

The argument that any harm could come to the owner of either parcel by the joint assessment is unsound, for it is not true that the owner would have to pay on all or redeem all. The owner may pay on any subdivision or redeem any subdivision. Sections 3824 and 3853, Ann. Code 1892.

It is the duty of the owner of land to give it in to the assessor, and, if he does not, the assessor is to assess it. Section 3772. The assessor is to call on each person for a list of his personal property. Section 3754. Not so as to land; nor is any oath required as to land. The assessor must assess it as best he can. A time is fixed for all objections. Section 3787, et seq. If the negligent owner has left the assessment to the assessor, and has any objection to the assessment, he should make them at the time prescribed, failing in which, he must pay on his own. If not, it must be sold, and, if not redeemed, it is lost to him. The requirement as to separate lands of different owners is based on the requirement that owners shall give in the lands to the assessor, and presupposes that to be done. How else is the assessor to know as to ownership?

Our law is extremely liberal to the owner. He must know his own, and pay the taxes on it, or lose. Every opportunity is given for correction of errors and prevention of injustice. It is only by neglect and failure of plain duty that loss can come. The rights of infants and persons of unsound mind are safeguarded, and adults can suffer only by neglect of the most reasonable requirements.

The state has been trying for many years to compel land owners to pay taxes on their land, and those who disregard their obligations to the state and fail to pursue the laws are entitled to have only themselves to blame. An assessment is necessary; but placing the land on the roll for assessment, with a valuation, by a description commonly used and understood, is an assess-

ment, and the owner, who knows his own, is bound to look after it, and complain at the time and in the manner prescribed for all, and, if he does not, he must suffer the consequences. It is no hardship or injustice to visit the legal consequences of his disregard of duty and neglect of his interest on one who fails to give in his land for taxation, and to look after it, and pay the taxes on it, or redeem it, until years have elapsed and sales have been made and value increased.

The courts are bound to support the legislative policy to secure payment of taxes on land, and uphold all acts not in contravention of the Constitution. The decisions in other states, whose statutes are different from ours, and much in the works on Tax Titles, are wholly inapplicable here, where our system is *sui generis* in many respects.

The decree of the chancellor is reversed, and a decree entered here confirming the title of complainant.

*Reversed.*