STERN *et al. v.* PARKER.

(In Banc. April 22, 1946. Suggestion of Error Overruled Sept. 23, 1946.)

[25 So. (2d) 787. No. 36105.]

28

**Hannah, Simrall & Foote**, of Hattiesburg, for appellants.

**H. H. Parker**, of Poplarville, and **U. B. Parker**, of Wiggins, for appellee.

**O. B. Triplett, Jr.**, of Forest, and **Walter Sillers**, of Rosedale, as amici curiae.

Argued orally by **T. C. Hannah,** for appellants, and by **H. H. Parker,** for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This case is here on appeal from the chancery court of Stone county. The relief sought by complainant, appellee here, was a decree confirming his title to the lands involved, including the entire oil, gas and minerals therein; and cancelling the claims of appellants, and others not appealing, defendants there, to said lands, oil, gas and minerals.

To this bill of complaint, appellants demurred, assigning as grounds that there was no equity on the face thereof; that complainant was not entitled to the relief sought as against the demurrants, appellants here; or any relief whatever as against them. Some defendants, including Laureston R. Livingston and his wife, Ina P. Livingston, did not join in the demurrer, did not answer, and are not appellants here. They were joined as parties defendant because the land was assessed to him at the time of the tax sale, out of which this litigation developed.

This demurrer was overruled by the trial court, and appellants declining to plead further, final decree was

entered, granting appellee the relief sought. The relevant and competent factual averments of the original bill were all admitted by the demurrer.

The complainant, appellee here, was in the actual occupancy of the lands involved, and had been since May 26, 1942, when the suit was filed. On April 5, 1937, the lands, assessed to L. R. Livingston in 1936, were sold to the State of Mississippi for delinquent taxes thereon for the fiscal year 1936. No point is made against any of the steps in appellees acquisition of title from the State by a Forfeited Land Tax Patent on May 26, 1942, except as hereinafter set out.

The suit was brought because appellants were asserting a claim to and ownership of ''various and sundry interests in and to an undivided one-half of the oil, gas and minerals in, on and under said lands, the respective defendants claiming the respective undivided interests as is hereinafter listed or described, and the respective interest of each of said defendants, originating or being based upon the respective reservations to grantors in the chain of title as is hereinafter particularly set out and described, with the exceptions of the defendants, Laureston R. Livingston and Ina P. Livingston, his wife, who are made defendants herein because of the fact that the land was assessed to them at the time of the tax sale hereinbefore shown, they being made defendants herein for said reason to the end that any claim which they may hereafter assert may be settled and set at rest, they having never, so far as claimant is advised and believes, asserted to said lands, or any part thereof since its sale for taxes.''

The lands became vested in Pearl Wright and Maurice Stern, who, with John H. Hinton and Herbert A. Camp, conveyed the lands to McCormick Harvesting Machine Company, by warranty deed on May 2, 1902. In this deed was incorporated the following clause: ''It is expressly understood and agreed that the grantors herein reserve and except from the above conveyances for the sole use,

benefit and behalf of themselves, their heirs and assigns a full one-half interest in all the deposits of clay, oil and minerals of whatsoever kind in and upon said lands, or any part thereof whensoever and by whomsover discovered, and the right is reserved at all times to enter upon said land and search for said deposits.''

The original bill also sets out a claim of the Ten Mile Lumber Company based on a reservation in its conveyance to the Finkbine Lumber Company on August 14, 1908, as follows: ''The Ten Mile Lumber Company hereby reserves one-half of any and all oils and minerals that may be on or under said lands or any portion thereof, with right to enter upon said land at any time and explore for and remove same.''

With reference to this reservation, complainants averred that because of the prior reservation made by Pearl Wright, Maurice Stern, John H. Hinton and Herbert A. Camp, supra, the Ten Mile Lumber Company reserved nothing unto itself, and that ''The sale by the Ten Mile Lumber Company unto the Finkbine Lumber Company conveyed the undivided one-half interest in the oil, gas and minerals that it owned in, on and under said land, that it sold all the property that it did not reserve, and it only reserved an undivided one-half interest in the oil, gas and minerals and necessarily sold with the lands the other undivided one-half interest in and to said oil, gas and minerals, and by reason of its said sale of an undivided one-half interest of the oil, gas and minerals it divested itself of all the title to oil, gas and minerals that it ever owned or held in connection with its ownership.''

The Ten Mile Lumber Company was a defendant, but filed no answer, did not join in the demurrer, and is not an appellant here. Decree pro confesso was duly and legally taken against Laureston R. Livingston and wife, Ina P. Livingston, the Ten Mile Lumber Company, a corporation, and the Stronghope Mineral Company, a corporation, which also did not answer or demur or appeal.

The heirs, devisees and assigns of Pearl Wright, Maurice Stern, John H. Hinton and Herbert Camp, supra, were claiming the benefit of the reservation in May 1942, among the assigns being the Stronghope Mineral Company by virtue of a deed dated May 15, 1940, which corporation, as stated, made no contest of these proceedings. The appellants all claim through the four named parties, called in the bill, "common source of title."

The original tax sale of the lands, as stated, was for default in payment of the 1936 taxes thereon assessed to L. R. Livingston as follows:

"Name of purchaser, When Sold To Whom Assessed
                          Day  Mo.  Year
State of Mississippi  5th  Apr.  1937  L. R. Livingston
        "Description of Land        S. T. R.
        Division of Section,
        SE of SW & S½ of SE      8-3-12"

There was no separate assessment of the oil, gas and minerals in, on and under said lands. It is the contention of appellee that this assessment was all-inclusive, and was an assessment of the surface and everything beneath the surface, including oil, gas, clay, and minerals. The appellants claim that the oil, gas, clay and minerals embraced in the original reservation by the four individuals, denominated "the common source of title," were not assessed thereby. Appellants argue that the "forfeited tax land sale did not in any manner affect the rights and interests of these appellants; but that the titles, rights and interests of these appellants ·are still owned by said appellants and are subject to back taxation for a period of fifteen years."

This issue is the question for decision here. It was decided in favor of complainant below. Appellee says that oil, gas and mineral rights, with the right to enter the land, comprise an estate in the land, quoting Stern v. Great Southern Land Co., 148 Miss. 649, 114 So. 739, 740: "The deposits of clay, oil, and minerals under the surface of land, of themselves, constitute land, and are susceptible

of separate ownership from the ownership of the surface of the land." Also Merrill Engineering Co. v. Capital National Bank of Jackson et al., 192 Miss. 378, 5 So. (2d) 666, to the effect that, until brought to the surface and reduced to possession, oil or gas constitute an interest in real estate. Here we have mentioned specifically "clay," in the reservation, which is a component of the land itself, a species of the soil, so to speak, and a part of the real estate.

In Gulf Refining Co. v. Stone, 197 Miss. 713, 21 So. (2d) 19, 21, we said: "There is not to be gathered from what has been said herein that an oil or gas lease is not separately assessable, ad valorem. Such a lease or conveyance with the right of entry is an estate in land, subject to ad valorem taxation, but not including the oil or gas as a separate item of valuation."

It is argued here that there is now before us the necessity of a decision of the issue pretermitted by us in Smith County Oil Co. v. Board of Supervisors, Simpson County, 200 Miss. 18, 25 So. (2d) 457, 458, wherein we said: "If the lessee does not obtain the exclusive surface rights, and the lessor retains in part such surface rights,—if there is or may be hereafter any such a lease,—a different and a more difficult question would be presented, which we will not approach until it is squarely before us."

There may be more than one estate in the same lands, oil and minerals beneath the surface, the surface, and timber on the surface, as instances. Fox v. Pearl River Lumber Co., 80 Miss. 1, 31 So. 583; McKenzie et al. v. Shows et al., 70 Miss. 388, 12 So. 336, 35 Am. St. Rep. 654, and others. In the case at bar, the reservation dated May 2, 1902, created two estates in the described land, the surface, and the oils, minerals and clay, with right of entry. Both estates are subject to assessment, separately, or as a unit, as the case may be.

As held by us in Gulf Refining Co. v. State, supra, and as provided in Section 9770, Code 1942, the estate reserved in the lands involved was subject to ad valorem taxation.

The statute directs, referring to such separate estate as reserved here, "all of such interest shall be assessed and taxed separately from such surface rights and interests in said real estate, and shall be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes." This statute was adopted by the Legislature in Chapter 171, Laws of 1930, now Section 9770, Code 1942. Appellants seem to concede the purpose and effect of this legislation, as they say in their brief: "The assessor then (at the date of sale) had the right to back assess the said estate (that reserved) for a period of fifteen years and collect taxes on said estate for said period of time." Appellants also contend that the doctrine of caveat emptor applied to the State, and also appellee in the purchase of this tax forfeited land. As to this, see Kelly et al. v. Coker et al., 197 Miss. 131, 19 So. (2d) 519, 520, where we said: "Appellee Coker pleads rather informally his status as a bona fide purchaser . . . This point is not argued by counsel, and is not here decided."

Appellants also argue that the assessment of the lands against Livingston was not against them, and did not affect their separate sub-surface estate. Since he owned only the surface, and it was his duty to see that his assessment was correct, it is not to be extended to the estate of appellants beneath the surface, they argue. This argument overlooks the equal duty of appellants to see that their estate was assessed and taxed correctly, so that a purchaser depending upon the notice involved in the assessment should not suffer for the failure of a taxpayer, in like position with appellants to perform this duty. The omission was their fault, and they, and not the State or its patentee, should suffer. Here, for a third of a century these separate estates existed. The lands having been assessed without exception or reservation, and not divided into separate estates, assessed to separate owners, the assessment, supra, was of all the lands so far as tax liability was concerned, and subject to sale as an entirety.

The assessment was a judgment and a lien on all the realty on, above, or under the surface. Gully, State Tax Collector v. Mississippi Valley Co., 181 Miss. 669, 180 So. 745, and cases therein cited. One such case is Gully, State Tax Collector v. J. J. Newman Lumber Co., 178 Miss. 312, 172 So. 740, 741, wherein we said, among other things: "The land had been assessed on the rolls for the years 1913 and 1914 and had passed under the eyes of the assessor and board of supervisors, and been duly and legally approved by the latter. Therefore, it was not 'unassessed' for these years in the sense that it had escaped assessment and could be back assessed by the collector."

Appellants contend that the Newman case rather supports their position since it also says: "That escapes assessment which never has in fact been assessed in any way. That which, as a matter of fact, has been returned by the owner, placed upon the assessment roll by the assessor, dealt with by the board of supervisors, and by the tax collector, cannot be said, in any proper sense of the words 'escaped taxation' or within the scope of the evil to be remedied by the revenue law, to have escaped taxation." Here, however, the land cannot be said not to have been taxed "in any way." The land was assessed on the tax rolls by governmental subdivisions at a valuation, approved by the board of supervisors, after notice to those interested to appear and object. These appellants never did appear and object or do their duty to the taxing powers, themselves, their government or fellow citizens. The land was assessed in its entirety, and that means all of its assessable estates, by this unit assessment. This, they could and should have had corrected then, but did not.

Hazlip et al. v. Nunnery et al. (Miss.), 29 So. 821, is a case where the land was assessed as an entirety. One party claimed a contingent interest under a will, the other party claimed under a tax sale. There were no separate assessments. In that case, upholding the tax sale, we held that the tax sale was valid, because the taxes were a lien

on the land itself, and the obligation devolved on all persons in any way interested to see that they were paid. See also Eureka Lumber Co. et al. v. Terrell (Miss.), 48 So. 628; City of Jackson v. Ashley, 189 Miss. 818, 199 So. 91.

The fact that the tax assessor did not assess the subsurface estate of appellants is not available to them to defeat the claims of appellee here. It was their primary duty to protect themselves, the governmental rights, and their fellow citizens. A vendee cannot get the benefit of constructive notice, unless his conveyance is filed for record with the chancery clerk. If handed to the clerk, who neither files nor records it, the effect is the same. If the benefit of notice is to inure to the vendee, he must see to the actual legal filing and recording of the instrument, although it is the mandatory duty of the chancery clerk to do both, upon receipt of the deed for that purpose. So here, the appellants cannot repair their dereliction in the duty to see to the proper assessment of their separate estate in this land by the argument that the assessor also failed to assess it, and that both errors should be cured by the collector back assessing it for fifteen years, ignoring rights of other parties which may have intervened in that long period of time. But, more to the point, since the land was already entirely assessed, and was on the assessment roll, it had not escaped taxation, and hence was not entitled or subject to back assessment, either wholly or partially, after it had been sold for defaulted taxes. The land had appeared on the assessment rolls by its definite governmental description, and had thus come under the eyes of the proper assessment and taxing authorities, and by such descriptions the land had been assessed, and sold for non-payment of the taxes. This was sufficient to carry with it the title of the entirety of the land, both above and below the surface for the reasons stated, and in harmony with our statutes and decisions. There have been called to our attention and we are aware of well-reasoned opinions of courts of some other juris-

dictions, and rules in some texts based thereon, holding contrary to the rule in our jurisprudence. Our own statutes and judicial precedents must control in Mississippi, however.

If we were to reverse the decree of the learned chancellor in this case, we would put owners of some estates in lands in a position to escape taxes altogether in some cases, and certainly to withhold tax payments until they should in the course of years decide, due to change in conditions, such as prospect of oil or gas or other minerals, to pay the taxes by the expedient of back assessment for fifteen years. And this, too, in spite of the contingency that in the meantime, the lands by a tax sale, valid in all steps of the requisite procedure, except the performance of their duty by delinquent complaining owners, the lands, or estates therein, have passed, as here, into other hands by statutory procedure duly followed. We do not feel we should thus aid such parties. Rather, as here, we should affirm the decision of the chancellor, and thereby require in the future observance of the statutes involved, requiring certain performance of mandatory duties and obligations from owners of various estates in lands. Thus, the State will receive a just revenue from every taxable estate in land; those who deal with the State will be protected; burdens of government will be fairly distributed; purchases of land held by the State for nonpayment of taxes will be encouraged; the revenue of the State will be increased; the perpetrators of the wrong will suffer instead of one not at fault; and evasion or withholding of taxes will be avoided. Crawford v. McLaurin, 83 Miss. 265, 35 So. 209, 949; Moores v. Thomas, 95 Miss. 644, 48 So. 1025.

We cannot affirm the action of the chancellor in confirming the title of appellee, because the process required by our statutes for that procedure is absent from the record. Section 1314, Code 1942, proceedings to confirm tax titles, requires a special process, therein described, to all persons having or claiming any legal or equitable in-

terests in the lands. There is no such process here. Section 1315, Code 1942, suits to confirm State land patents, requires that the State be made a party, with process served on the attorney general. There was no compliance with these requirements of this statute. However, the prayer is also for cancellation of the claims of defendants as clouds upon the title of appellee, which was also decreed to him by the chancery court, and correctly so.

It follows, therefore that in our opinion the decree of the chancellor was correct as to cancelling the claims of appellant, and other defendants, as clouds on the title of appellee. But the chancellor was incorrect, for the reasons just above stated, in confirming the title of appellee otherwise.

Affirmed in part, reversed in part, and decree here accordingly.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

For more than a generation, and especially since the decision in Eureka Lbr. Co. v. Terrell (Miss.), 48 So. 628, it has been understood as the settled rule in this State that when a parcel of land has been assessed by a valid surface description, as for instance by the government survey, without any reservations or exceptions or limitations either in the particular assessment or elsewhere on the roll, this would be to the same effect, so far as the description is concerned, as if it were a private deed of conveyance and would include every interest in the land so described and not only the surface but every estate, horizontal or otherwise, and whether above or below the surface, although separately owned.

This, in fact, is the effect of the opening section in the division on ''Assessment'' in the Code of 1942, Section 9744, a section which has been in our statutes for more than a century. By that section the assessment of land is a proceeding in rem, it being immaterial that the land

is not assessed to the true owner, but when assessed under a valid description the assessment shall bind all those interested in it, in which connection it must be noted that under Sections 9935 and 9936, Code 1942, the tax sale under such an assessment, when shown by the certified list thereof, shall vest in the State or the individual purchaser, as the case may be, "a perfect title to the land sold for taxes."

And for three quarters of a century, say as far back as Horne v. Green, 52 Miss. 452, it has been the settled rule, under statutes of which Sections 9789 and 9790, Code 1942, are the present representatives, that the final judgment of the taxing authorities is conclusive, in the absence of objections thereto presented before the said authorities in the statutory manner and at the time and place designated by the statute, as to all issues resting in pais, as for instance "listing the property to the wrong person and the like", which would include, of course, the assessment of an interest therein to the wrong person.

Here the assessment was of the appropriate surface description without any reservation or qualification or limitation appearing anywhere on the assessment rolls. It included therefore appellants' horizontal estate and inasmuch as they made no objections in writing as required by Section 9790, Code 1942, the assessment so made became unassailable as to the matter in pais upon which appellants seek now to rely. And this was the ultimate basis upon which our original opinion in this case is founded, as an unbiased examination of it will disclose.

Appellants now concede, as we understand their argument in effect to be, that all that has above been said would be true except for the more recently enacted Section 9770, Code 1942, which they say mandatorily requires that an estate separately owned and such as here involved shall be separately assessed; that Section 9769 places the duty upon the assessor to ascertain the existence of these separate estates in the same piece of land; that the owner of the separate estate is under no obligation in respect

to the assessment until he is called upon by the assessor to render a list, etc., and that if the assessor does not call upon the owner of the separate estate for his list, and leaves the separate estate off the roll, this will produce the result that the separate estate has not been assessed at all, against which the only remedy would be a back tax assessment.

And, finally, appellants argue that if they had appeared and filed written objections as required by said Sections 9789 and 9790, there would have been nothing that the taxing authorities could have done to give relief from the assessment as made. They fail to point out wherein or why the taxing authorities could not have given the appropriate relief had thy filed written objections showing thereby that their one-half interest in the minerals were assessed in such a way as to make the assessment of that interest an assessment to the wrong person; and we think Section 9789 is broad enough in its language to authorize the relief, but if not so, the statute by allowing valid objections to be filed, would authorize by implication the doing of that which would take care of such objections, if shown to be well founded. It is an awkward argument as made by appellants that the proper course here is that the taxing authorities ought to back assess this mineral interest as a separate assessment for each of the past fifteen years, and urge at the same time the contention that the said authorities could not have separately assessed it for any one of those years on a written objection at the time the original assessment was made.

Appellants are, therefore, estopped by judgment and it was unnecessary for us to have said anything in our original opinion about an estoppel in pais. We are of the opinion that Section 9770 and Section 9769, Code 1942, were not intended to displace the policy which has so long prevailed in this State as expressed in Sections 9789 and 9790, Code 1942, and the other sections mentioned herein, or to engraft upon them any such radical exceptions as those contended for by appellants in this case.

Undoubtedly it was a purpose of Section 9770, Code 1942, to allow the assessments of the separate interests therein mentioned to be so made as to relieve the owners of such interests of any concern or responsibility as to any other interest in the described parcel of land, but if this section were of a self-executing and mandatory effect, and when taken in connection with Section 9769, Code 1942, places the burden of the duty on the assessor, as appellants contend, then the assessor would be required to examine the thousands of deeds of record in his county to ascertain on precisely what lands and what particular separate rights were owned in the various descriptions in his county and who owned them, a task which would require the prolonged services of persons highly skilled in the law, and assessors are not required so to be and they are not sufficiently paid to enable them to employ any such services. We are not called on in this case to attempt a categorical statement as to the purposes of Sections 9769 and 9770, Code 1942, but we do say, and are safe in saying, that they have no such mandatory and self-executing effect as that contended for by appellants in this case, which contention in its final analysis is, as already mentioned, that in any event if there has been no separate assessment of the separate interest, there has been no assessment of it at all.

Suggestion of error overruled.

**Sydney Smith, C. J.**, took no part.