## Hendrix $v$. Foote, et al.

In Banc. Dec. 31, 1948.

(38 So. (2d) 111)

(1)

4

8

Ben Stevens and Jones & Ray and Robt. L. Calhoun, for appellant.

**Alexander & Alexander**, amici curiae, for appellant.

**Buchanan & Montgomery,** for appellees.

24

Hannah, **Simrall & Aultman,** amici curiae, for appellees.

**Montgomery, J.**

This matter is now before us on Suggestion of Error. For former opinion see Hendrix v. Foote et al., Miss., 36 So. (2d) 145.

There are two questions necessary for our decision: First, did the failure of the President of the Board of Supervisors to sign the minutes of the Board for July 13, 1940, recessing to convene on Monday, July 15, 1940, invalidate the order of the Board, entered on July 15, 1940, which preliminarily approved the assessment rolls, and if not, then second: Does Section 9770, Code of 1942, permit the separate assessment and sale for taxes of a fractional interest in the oil, gas, and other minerals.

Let us proceed to the consideration of the first question hereinabove set out. On September 21, 1942, the Tax Collector of Wayne County sold for delinquent taxes for 1941 the property described as "½ min. int. SW¼, NW¼ and NW¼ NW¼ Section 31, Township 10, Range 8". This mineral interest had been assessed upon the assessment roll of the County for 1941 to Alfred Foote. That same assessment roll assessed to Masonite Corporation the land and assessed to Gulf Refining Company the mineral leasehold interest in and to the same.

On the same day, September 21, 1942, the Tax Collector of Wayne County sold for delinquent taxes for 1941 the property described as "¼ min. int. SW NE and NE SE Sev. 3 Township 6 Range 7". This mineral interest had been assessed upon the assessment roll for 1941 to Alfred Foote. This same assessment roll assessed the mineral leasehold interest to Gulf Refining Company and the land to E. D. West.

The Board of Supervisors of Wayne County at the July, 1940, meeting of said Board met in regular session on July 1, 1940, and by minutes duly signed recessed to convene on July 2nd, 1940. In this same manner legal meetings of said Board were duly held on the 3rd, 5th, 6th, 9th, 10th, and 12th. On the 12th the Board recessed to convene again on the 13th and on the minutes of the 13th there is an order recessing to Monday July 15th. The minutes for the 13th have never been signed. On July 15th the Board reconvened in regular session and entered upon that day's minutes an order approving the real property assessment roll for 1940 and 1941. The minutes for July 15, 1940, were duly signed. Does the failure of the President of the Board of Supervisors to sign the Board's minutes for July 13, 1940, on which minutes there was an order recessing to convene on July 15, 1940, invalidate the proceedings of the Board had and done on July 15, 1940? We think not.

Section 2877, Code of 1942, provides as follows:

"At the meetings for the transaction of business under the revenue law, the board of supervisors may continue in session as long as business may require, but at other regular meetings, they may sit for a period of not longer than six days in any one month; provided, that in counties having a population of more than forty thousand, the board may continue in session at any other regular meeting than the revenue meeting of not longer than ten days in any one month; and provided further, that the board of supervisors may recess from time to time, subject to the limitation herein provided, to convene on a day fixed by an order of the board entered on its minutes, and may transact any business coming before it for consideration."

Section 2886, Code of 1942, provides:

"It shall be the duty of the clerk of the board of supervisors to keep and preserve a complete and correct record of all the proceedings and orders of the board.

He shall enter on the minutes the names of the members who attend at each meeting, and the names of those who fail to attend. He shall safely keep and preserve all records, books, and papers pertaining to his office, and deliver them to his successor when required. The minutes of each day shall be read and signed by the president before the final adjournment of the board.''

Section 2886, Code of 1942, was amended by Chapter 305, Laws of 1946, but we are not here concerned with the amendment. We are concerned on with the statute as it stood in July 1940, when the meeting of the board was held.

It will be noted that Section 2877 provides that ''. . . the board of supervisors may recess . . . to convene on a day fixed by an order of the board entered on its minutes . . .'' and that Section 2886 requires that ''. . . The minutes of each day shall be read and signed by the president before the final adjournment of the board.''

While Gardner et al. v. Price et al., 197 Miss. 831, 21 So. (2d) 1, and Brand v. Board of Supervisors of Newton County, 198 Miss. 131, 21 So. (2d) 579, are enlightening and helpful neither decision is controlling here.

Sections 2877 and 2886 are in pari materia and must be construed together and, if possible, read into each other, so as to make a consistent whole. Clarksdale Bldg. & Loan Ass'n v. Board of Levee Com'rs for Yazoo-Mississippi Delta, 168 Miss. 326, 150 So. 783; Greaves v. Hinds County, 166 Miss. 89, 145 So. 900; State v. United States Fidelity & Guaranty Co., 157 Miss. 740, 128 So. 503; Life & Casualty Ins. Co. v. Walters, 180 Miss. 384, 177 So. 47; Board of Supervisors or Attala County v. Illinois Cent. R. Co., 186 Miss. 294, 190 So. 241.

Construing Sections 2877 and 2886 together as a constituted whole it appears that while Section 2877 does require an order by the board, entered on its minutes in order to recess to convene on a day named in the

order, still it is further provided, under Section 2886 that none of the minutes are required to be signed by the president until the last day of the meeting. Section 2886 is very clear in its terms. ██ ██ The board of supervisors can meet and recess from day to day without signing the minutes for any day's meeting, and, just so long as the minutes are signed on the last day, the terms of both Sections 2877 and 2886 are literally complied with. Hence, when the Board of Supervisors met on July 15, 1940, they had the right to so meet and full jurisdiction to proceed with the business before the Board regardless of whether or not any of the minutes of the previous days of the meeting had been signed. Hence, the board was lawfully in session on July 15, 1940, and the order approving the real property assessment roll for 1940 and 1941 having been entered on that day's minutes, and the minutes having been duly signed by the President, the assessment roll for 1940 and 1941 thereupon stood duly and lawfully approved by the order entered on the minutes of that day. It is only the unsigned minutes of July 13, 1940, that conflict with the statute and that day's minutes only are invalidated by it.

Let us now consider the second question: Does Section 9770, Code of 1942, authorize the separate assessment, and, if the taxes are not paid, the subsequent sale for delinquent taxes of a fractional interest in the oil, gas, and other minerals? The former opinion held that it does not. We have carefully reconsidered this whole matter, and a majority of the Judges agree that the Suggestion of Error should be sustained and the former opinion withdrawn.

One hundred years ago, in 1848, the Legislature enacted what now appears as Section 9772 of the 1942 Code, which reads as follows:

"In making his land roll the assessor shall commence the assessment with the lowest number of range and township in his county, and with the northeast corner

of each township, and shall proceed numerically, with all the sections, townships, and ranges in his county, first setting down all the subdivisions of each section, if they belong to different individuals, or the whole section together, if owned by one person, and not divided on account of parcels being of different values; and if more than one person shall claim to be the owner of the same tract or parcel of land the assessor shall so state in his assessment roll, and the tax collector shall only collect the taxes on one assessment. . . ."

In Stevenson v. Reed, 90 Miss. 341, 43 So. 433, decided in 1907, it was said that under this statute a sale for delinquent taxes of an undivided one-half interest in an eighty acre tract was illegal. In Fountain v. Joullian, 110 Miss. 812, 71 So. 2, decided in 1916, it was held that the statute does not authorize a tax collector to apportion the different undivided interests to any number of parties who may claim such interests therein and sell such undivided interests for the delinquent taxes due thereon. The statute itself provides that: ". . . if more than one person shall claim to be the owner of the same tract of parcel of land the assessor shall so state in his assessment roll, and the tax collector shall only collect the taxes on one assessment."

It is beyond dispute that in 1930, when the Legislature enacted Chapter 171 of the Laws of 1930, which now appears as Section 9770 of the Code of 1942, fractional undivided interests in land could not be separately assessed to the respective fractional owners, so that each such fractional owner could have his undivided fractional interest separately assessed to him. Neither could he pay the taxes due only on his fractional interest and in default thereof have the tax collector sell only such fractional undivided interest. It was required by the statute that all of said fractional interests be assessed as a whole, and that the assessor state on the assessment roll that the tract was claimed by more than one person

as owner, and the tax collector was required to collect the whole taxes on all the fractional interests under the one assessment. But, in Davidson v. Wallace, 1876, 53 Miss. 475, it was held that where one tenant in common paid the whole taxes on the land to prevent a sale of it, he, or, his assigns, were entitled to and might enforce a lien on the interests of his cotenants for the amount each co-tenant should have paid.

The Legislature knew this status of the law on the assessment of undivided fractional interests in land, at the time it enacted Chapter 171 of the Laws of 1930. They knew that fractional interests in land could not be separately assessed.

The Legislature in 1930 also knew that in Stokely v. State et al., 149 Miss. 435, 115 So. 563, decided in 1927, this Court had held that an oil and gas lease is a conveyance of an interest in land, and that in Moss v. Jourdan, 129 Miss. 598, 92 So. 689, (decided in 1922) it had been held that minerals in place were capable of separate ownership from the surface of the land and that the owner of such minerals had the right to remove same from the land, subject to claim for such damage as might be thereby occasioned to the owner of the surface.

The Legislature, at that time, also knew that the Amory and Jackson gas fields had been discovered and that large scale buying and selling of mineral interest in lands in said fields was a matter of common daily occurrence. They knew, too, that customarily the owner of the fee would execute a lease to a producing company, conveying an undivided seven-eighths interest in the oil and gas; that the fee owner would reserve an undivided one-eighth interest therein; that frequently the holder of the lease would convey an overriding royalty; that the owner of the fee would convey to purchasers a part of his royalty and these purchasers would split up their purchases in sales to many others, resulting quickly and shortly in large numbers of owners, owning small undivided fractional interests in the minerals.

The Legislature also knew that under the law, as it then stood, no individual owner could have his small undivided fractional interest separately assessed to him. They knew that if landowner A had given a seven-eighths oil and gas lease on his lands, to B, retaining a one-eighth royalty and had then sold one-half of his royalty to C, that there would have occurred a severance of the seven-eighth leasehold interest belonging to B and the one-sixteenth royalty interest owned by C, but neither B nor C could have their fractional undivided interest separately assessed to them, but that the whole mineral interest was required by the statute to be assessed as a unit belonging to more than one person and the tax collector was required to make one sale of the whole unit on the one assessment. If John Doe should be the owner of an undivided .0002 interest in the unit, the value of which unit was six hundred° thousand dollars, and the taxes due on the whole unit amounted to $18,000.00, then John Doe would find it impossible to have his .0002 interest separately assessed to him at its proportionate value of $120.00, but the whole mineral unit was required by law to be assessed as a unit, and if the taxes were unpaid, the law placed on John Doe the duty of paying the entire tax bill of $18,000.00 on the entire unit in order to avoid the sale of his interest, though on it there was due for taxes only the proportionate sum of $3.60, and then sue his numerous and sundry cotenants for a contribution of the respective amount due proportionately by each of them. He would find it impossible to raise so large a sum and accordingly his interest would be confiscated for taxes.

So, in 1930, the Legislature, realizing the necessity for relief, enacted Chapter 171 of the Laws of 1930, now appearing as Section 9770, Code of 1942, which reads as follows:

"Whenever any buildings, improvements or structures, mineral, gas, oil, timber or similar interests in real estate,

including building permits or reservations, are owned separately and apart from and independently of the rights and interests owned in the surface of such real estate, or when any person reserves any right or interest, or has any leasehold in the elements above enumerated, all of such interests shall be assessed and taxed separately from such surface rights and interests in said real estate, and shall be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes. All interests in real estate herein enumerated shall be returned to the tax assessor within the same time and in the same manner as the owners of land are now required by law to list lands for assessment and taxation and under like penalties. The tax assessor shall enter the assessment of the interests herein enumerated upon the assessment roll by entering the same upon the next succeeding line or lines of the roll following the assessment of the surface owner, the name of the owner and the name of the interest, and by placing the value in the appropriate column or columns on the roll; or the assessor may enter the assessment of any or all of such interests upon a page or pages in the land roll following the assessment of the lands of the county, and the value of all such interests shall be included in the recapitulation of the roll. And the value of said interest or interests shall be determined and fixed in the same manner and by the same officials now required by law to value and assess property for taxation.''

It is known to everyone that many large producing oil companies own fractional leasehold interests in this State which have been assessed to them and upon which they have paid the taxes. In many instances, the taxes due upon the assessment against the surface of the lands have contained no exception of the minerals, so separately assessed to such companies, and said taxes have not been paid, and said lands have been sold for the payment of such taxes. If such fractional leasehold interests are not

separately assessable for taxes and said attempted assessments thereon are void, then many fractional leasehold interests, some producing oil, would be lost to their owners and title thereto passed to such purchasers at such tax sales. Stern v. Parker, 200 Miss. 27, 25 So. (2d) 787, 27 So. (2d) 402.

It is also well known that for twenty years owners of separately owned minerals, royalties and leaseholds have been separately assessed with and have paid taxes on such separately owned interests. These oil and gas interests were fractional undivided interests and often of trivial value. The Legislature recognized the nuisance connected with the assessment and taxation of separate minerals, royalty and leasehold ownerships, and passed the Documentary Stamp Act of 1946, being Chapter 409, Laws of 1946, Section 2 of which reads as follows:

"To encourage the purchase of leases upon and interests in oil, gas and other minerals in the state of Mississippi, to encourage drilling for and production of such minerals, and to relieve the taxing officials of the counties of the state of the onerous duties of assessment for, collection of and sale for ad valorem taxes for such interests (which the legislature finds are generally assessed at nominal values resulting in taxes not commensurate with the services required of such officers), all nonproducing leasehold interests upon all oil, gas and other minerals in, on or under lands lying within the state of Mississippi, created or assigned after the effective date of this act, and also all nonproducing interests in such oil, gas and other minerals (including royalty interests therein) hereafter conveyed to a grantee or purchaser or excepted or reserved to a grantor separately and apart from the surface, shall be exempt from all ad valorem taxes levied on or after January 1, 1947, by the state of Mississippi, or any county, municipality, levee district, road district, school district, drainage district or other taxing district within the state or becoming a lien on or after said date. Any

sale for taxes of the surface or of the remainder of the fee shall not in any manner whatsoever affect the interest or interests hereby exempted.

"For the same purpose and with like effect there is hereby likewise exempted from such ad valorem taxation all such interests created prior to the passage of this act which are owned separately and apart from the surface, provided that as a condition precedent to obtaining such exemption upon existing interests the then owner thereof shall make application for exemption of the interest then owned by him as hereinafter provided and pay, by the purchase of documentary tax stamps, a sum equivalent to the tax herein levied by section 4, et seq., on instruments hereafter executed creating, transferring or reserving corresponding or similar interests. If any such sum is paid after January 1, 1947, then such exemption shall apply only to taxes becoming a lien after such sum is thus paid."

Stern v. Parker, supra, holds that the fractional mineral interest must be separately assessed or it will pass under a tax sale of the fee in the land. Section 9770 permits assessment where "owned separately and apart from and independently of the rights and interests owned in the surface of such real estate." Suppose A owns a tract of land and executed to B an oil and gas lease upon the same, conveying to B a determinable fee in an undivided seven-eighths of the oil and gas in place and reserving to A an undivided one-eighth royalty interest therein; then A sells to C one-half of his royalty or an undivided one-sixteenth interest. Now the one-sixteenth royalty retained by A is not "owned separately and apart from and independently of the rights and interests owned in the surface of such real estate" and is not subject to assessment under Section 9770, so unless Section 9770 permits a separate assessment to B of his leasehold interest and a separate assessment to C of his royalty interest, then there could be no assessment as it would be impossible to

include all of the separately owned interests, including A.'s retained royalty, under one unit assessment of the whole.

■■■ The Armory and Jackson gas fields had been discovered when the Legislature enacted Section 9770, and the Legislature was dealing with an entirely new and independent subject matter that had arisen with reference thereto. The assessment of interests in oil and gas could not be handled adequately, justly and conveniently under the then existing law. They established and had the right to establish a different method of assessment, just as had been done in the case of banks, corporations, and joint stock companies, so long as the law applied equally on all within the class and was not discriminatory against others occupying a like position. Section 9770 does not deal with the same subject matter as Section 9772 and is not in pari materia with it. The language contained in Section 9772: "and if more than one person shall claim to be the owner of the same tract or parcel of land the assessor shall so state in his assessment roll  .  .  ." cannot control Section 9770 which is a later enactment and is not in pari materia with it.

If it be said that Section 9770 is dependent upon Section 9772 for a part of the plan of assessment or collection, this does not make Section 9770 in pari materia with Section 9772. The Legislature, in enacting Section 9770, was dealing with an entirely new subject matter, not known of at the time of the enactment of Section 9772, nearly one hundred years previous. The most that can be made of such an argument is that it portends to make Section 9770 ambiguous and uncertain as to whether the language in Section 9772 "and the tax collector shall only collect. the taxes on one assessment" shall apply to sales under Section 9770. We think it does for there is no ambiguity. when the undivided fractional interest is separately assessed to the owner it would still follow that the "tax collector shall only collect the taxes on one assessment".

Such is the clear legislative intent. There is no ambiguity here. But, if there were an ambiguity, this Court has repeatedly held that where the meaning of a statute is not clear, resort is had to the real purpose and intention of the Legislature in adopting the statute, which, when ascertained, the Court will give effect thereto, even though the letter of the statute be violated. What is within the intention is within the meaning of the statute, although not within the letter. Gunter v. City of Jackson, 130 Miss. 637, 94 So. 844; Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L. R. A., N. S., 541, Ann. Cas. 1914B, 392; Learned v. Corley, 43 Miss. 687; Bonds v. Greer, 56 Miss. 710; Adams v. Yazoo & M. V. R. Company, 75 Miss. 275, 22 So. 824. And, furthermore, the Court, in construing a statute, will not impute an unjust and unwise purpose to the Legislature when any other reasonable construction can save it from such imputation. Dunn v. Clinghan, 93 Miss. 310, 47 So. 503; Gunter v. City of Jackson, supra.

It is evidence that this Court, speaking through Judge Griffith, in ruling on the Suggestion of Error in Stern v. Parker, 200 Miss. 41, 27 So. (2d) 402, 403, expressed only the obvious, when it said: "Undoubtedly it was a purpose of Section 9770, Code 1942, to allow the assessments of the separate interests therein mentioned to be so made as to relieve the owners of such interest of any concern or responsibility as to any other interests in the described parcel of land . . ."

█ █ We have reached the conclusion that Section 9770 permits and requires the separate assessment of undivided fractional interests in oil, and gas, in place, to each separate owner of such a fractional undivided interest, insofar as not exempted by Chapter 134, Laws of 1944, and that the assessments of the undivided interests in the case at bar to Alfred Foote were valid assessments and the sale thereof passed title to Tom Hendrix, the purchaser.

If there be any conflict between this opinion, based as it is on the facts of this case, and the holdings in Gulf Refining Company v. Stone, 197 Miss. 713, 21 So. (2d) 19, and Smith County Oil Company v. Board of Supervisors of Simpson County, 200 Miss. 18, 25 So. (2d) 457, 26 So. (2d) 685, based as they are on the facts in those cases, then the opinion herein shall control.

The suggestion of error will be sustained, and the former opinion withdrawn, causes reversed and remanded.

DISSENTING OPINION

**Smith, J.**, (dissenting in part).

We are all in agreement upon the first question dealt with in the majority opinion, but I cannot concur in what is therein said on the second question, wherein the majority holds that Secs. 9770 and 9772, Code 1942, are not in pari materia, and are not to be read together. On the contrary, Sec. 9770, by its very terms, is dependent upon Sec. 9772, and could not move a step without its aid, and being so they are "in pari materia and must be construed together, and, if possible, read into each other, so as to make a consistent whole", to quote an earlier correct statement in the majority opinion. That, in effect, was what the original opinion in this case held, and I adhere to that opinion.

The majority opinion takes comfort from Stern v. Parker, 200 Miss. 41, 25 So. (2d) 787, 27 So. (2d) 402. The matter of the separate assessment of undivided fractional interests was not involved in that case, and no such question was in the mind of the Court in any opinion written therein.

In my judgment, the Suggestion of Error should be overruled.

**Griffith, C. J.**, concurs in the above opinion.