BAILEY, STATE TAX COLLECTOR, v. FEDERAL LAND BANK OF NEW ORLEANS.

In Banc. Dec. 12, 1949

No. 37561 (43 So. (2d) 375)

**Alexander & Alexander,** for appellant.

R. E. Spivey, Jr., E. F. Steiner, and Beverly C. Adams, for appellee.

**Alexander & Alexander,** for appellant in reply.

**McGehee, C. J.**

In order to expedite a final determination of the controversy involved in a former appeal by the State Tax

Collector from a decision of the Circuit Court of Madison County in favor of the Federal Land Bank, reported in 206 Miss. 354, 40 So. (2d) 173, the present litigation was substituted therefor in Hinds County where the cause could be heard at an earlier term of court than the former case could have been heard after its remand to the Circuit Court of Madison County.

It is conceded that the facts involved are the same as those recited in the first paragraph of the opinion in the reported case, supra, except that the assessment herein is one relating to one-half of the minerals underneath certain lands in Hinds County, instead of the assessment involved in the Madison County case. In this instance the State Tax Collector caused the County Tax Assessor to back-assess the Federal Land Bank with one-half of the minerals under the land in the first judicial district of Hinds County which it had sold to individuals and where it had retained one-half of the minerals and they were owned by the Bank on January 1, 1946, and where the land was then under an oil and gas lease such as is described in the first paragraph of the opinion on the former appeal.

In the former case the Board of Supervisors of Madison County sustained the objections of the Bank to the back-assessment so made and on the appeal to the Circuit Court in that County the action of the Board of Supervisors was affirmed. We reversed the judgment on that appeal and remanded the cause. A final judgment here was not rendered therein because of the fact that it had been stipulated "that the bank may enlarge its objections so as to make the point that even if the mineral interests involved are held to have escaped assessment and to now be subject to back-assessment for 1946 taxes, the maximum assessable interest is the $\frac{1}{8}$th royalty ($\frac{1}{2}$ of which is owned by said bank) and not the fractional mineral interest owned". That is to say, that the bank was to be allowed to enlarge its objections so as to make the

contention that even though it should be held that the bank is the owner of a ½ undivided interest in the minerals under the leases outstanding on January 1, 1946, it could only be assessed with a 1/16th mineral interest or royalty upon the theory that it owned only ½ of the ⅛th royalty under the lease and that the other ⅞ths interest in the minerals were owned by the lessee. Under our view of the case this is the only remaining issue not decided on the former appeal. It was then clearly held that a back-assessment was proper and the cause was remanded to determine what estate in the minerals should be assessed.

However, counsel seem to assume that there is also left open for decision on this appeal the further question of whether or not the assessment of the surface to the landowner by governmental subdivisions without exception as to the separately owned mineral interest in the bank, and on which assessment the taxes were paid for the year 1946 by the landowner, included the mineral interest owned by the bank, and precludes a back-assessment thereof. We shall, therefore, deal also with the latter question again in the light of the decision in the case of Stern v. Parker, 200 Miss. 27, 25 So. (2d) 787, 791, 27 So. (2d) 402, and in the light of what we have already said in Bailey v. Federal Land Bank, supra, in regard to the ground upon which the decision in Stern v. Parker, supra, was predicated.

In the instant case the back-assessment made by the County Tax Assessor at the instance of the State Tax Collector was approved by the Board. of Supervisors of Hinds County, but was disapproved and disallowed on the appeal to the Circuit Court of said county, except to the extent that the Circuit Court held that the bank was liable for back taxes for the year 1946 on a "1/16 mineral interest or a 1/16 royalty under said leases and is assessable with such interest only". In other words, the Circuit Court instead of either approving or dis-

approving the assessment as made by the taxing author-
ities, or fixing a different valuation on that which had
been assessed, reduced the quantity of the mineral inter-
est assessed to the bank from a ½ interest to a 1/16th
interest, thereby reducing the total valuation of the min-
erals under the land involved in this suit and owned by
the bank from the sum of $2,590.00 to the sum of $323.75
on the basis of $1.00 per mineral acre.

In the brief of counsel for the appellee bank it is con-
ceded that the present litigation ''is in effect a continua-
tion of the proceedings in the case of Bailey v. Federal
Land Bank of New Orleans, . . . and reported in 206
Miss. 354, 40 So. (2d) 173, on the appeal from the Circuit
Court of Madison County'', and since it is further con-
ceded that ''the facts are the same as those set out in the
first paragraph of the opinion of the court in the case of
Bailey v. Federal Land Bank, supra,'' it would follow
that such former decision should be controlling here as to
the law to be applied.

The stipulation of facts discloses that on January 1,
1946, the appellee, Federal Land Bank of New Orleans,
was the owner of a ½ undivided interest in and to all
the oil, gas and other minerals in, on and under the lands
described in the back assessment involved; that such
minerals were under the usual oil, gas and mineral lease
on January 1, 1946; that the Bank was receiving its share
of the annual rentals that were accruing under the lease;
that the leaseholder paid the taxes for the year 1946 on
its leasehold interest; and that the owner of the surface
paid the taxes levied on the land and assessed against
him thereon, without there having been any exception of
the minerals on the assessment roll for said year 1946.

On the first issue presented, we think it well settled
that ▮▮ ▮ the estate owned by an owner of minerals
in place is substantially different from the estate of an
owner of a ⅛th royalty or a part thereof, whether such
ownership of the royalty interest is acquired by purchase

or by a reservation or exception. ▮▮ The owner of all or an undivided interest in minerals in place which are under an oil and gas lease in the standard form is not only entitled to receive royalty in the event of production, but also annual rentals under the lease. He also owns the possibility of a reverter of the minerals in fee upon the expiration of the lease according to its terms or because of the failure to pay the annual rentals contracted for under the lease. Armstrong v. Bell, 199 Miss. 29, 24 So. (2d) 10; Koenig v. Calcote, 199 Miss. 435, 25 So. (2d) 763.

Moreover, ▮▮ the owner of minerals that are under a lease has the right to sell any part of his minerals in place while such a lease is in force the same as he could do if no lease had ever been executed. In other words, the right of an owner of minerals in place to receive annual rentals and the royalty, or any part thereof, that may accrue under a lease is incidental to his ownership of such minerals. He owns the minerals subject to the lease, and he may be assessed with the same subject to the lease. We are not justified in assuming in the absence of any proof on the point that $1 per mineral acre is not a fair and reasonable valuation of minerals in place which are under a lease. ▮▮ The record discloses that the bank had rendered an assessment to the taxing authorities of $1 per mineral acre for its minerals for the year 1946 and prior thereto without regard to whether they were under lease or not. They were so assessed by the County Tax Assessor during former years on a uniform valuation throughout the County of $1.00 per mineral acre whether under lease or not, and such assessment of a tax assessor is prima facie correct. Such assessment rendered for 1946 was withdrawn by the bank because of the decision in the case of Smith County Oil Co. v. Board of Sup'rs of Simpson County, 200 Miss. 18, 25 So. (2d) 454, 26 So. (2d) 685.

▐█▌ The assessment for 1946, made by the County Tax Assessor at the instance of the State Tax Collector and approved by the Board of Supervisors, was for ½ of the minerals in, on and under the land, and this is the assessment from which the appeal was taken to the Circuit Court. The question is whether or not the Circuit Court should have approved and affirmed that assessment. We are of the opinion that the assessment thus made should have been approved and affirmed by the Circuit Court, and that, therefore, the judgment of the Circuit Court which relieved the Bank of such assessment and substituted therefor an assessment of a "1/16th mineral interest or a 1/16th royalty under said leases" was erroneous and that, therefore, the judgment of the Circuit Court should be reversed and the assessment as approved by the Board of Supervisors for a ½ mineral interest should be reinstated; and that a judgment should be rendered here accordingly insofar as the contention of the appellee as to the extent of the estate to be assessed is concerned.

▐█▌ On the second issue presented by the briefs of counsel on this appeal as to whether or not the assessment of the land to the landowner and his payment of the taxes thereon for the year 1946, without the minerals having been excepted from such assessment, had the effect of constituting a payment also of the taxes on the minerals so as to preclude a back assessment thereof to the extent of either ½ of the minerals or "a 1/16th mineral interest or a 1/16th royalty under the leases", we do not think that the decision of this court in the case of Stern v. Parker, supra, sustains the contention of the Bank in that behalf. In that case, as pointed out in the opinion of the court on the appeal of the former case of Bailey v. Federal Land Bank, the court "did not hold that the owner of a separate mineral interest cannot be back-assessed when he has failed to list his interest for assessment and when the entire estate is assessed

to the surface owner. What the court did hold was that the owner of the separate mineral interest cannot avoid his duty to see that his mineral interest is assessed and take chances on the surface owner paying taxes on the whole, and then claim as a matter of right that the mineral interest should be back-assessed and taken out of the tax sale 'after it had been sold for defaulted taxes.' '' [206 Miss. 354, 40 So. (2d) 176]

The decision in the case of Stern v. Parker, supra, was based upon estoppel, as shown by both the opinion therein and by the opinion of this Court on the former appeal of this litigation in Bailey v. Federal Land Bank, supra. In the case now before us there has been no tax sale to divest the bank of its ownership of the minerals upon the theory of an estoppel, but on the contrary the bank still owned such minerals at the time of the back assessment.

Moreover, the same contention now made as to the nonliability of the bank for any back assessment of the minerals because of the payment by the landowner of his taxes on an assessment which did not except the minerals, was urged upon suggestion of error on the former appeal of Bailey v. Federal Land Bank involving a like controversy in that behalf, and the suggestion of error was overruled.

Nor are we confronted with an attempt here to doubly assess the bank for minerals under a lease, since there has been no attempt to assess the bank with both the minerals in place and for its royalty interest reserved therein under the lease, because the right to receive the latter is a mere incident to its ownership of the minerals in place with which it has been assessed and there was only an assessment of ½ of the minerals.

It follows from all the foregoing views that we are of the opinion that the cause should be reversed and a judgment rendered here for the appellant State Tax Collector

reinstating the assessment of ½ of the minerals, as made by the Board of Supervisors.

Reversed and judgment here for the appellant.

**Alexander, J.,** took no part in this decision.

**Roberds, P. J.** (dissenting).

Back assessment under the circumstances of this case would be contrary, in my opinion, to the holding in Stern v. Parker. In that case, the original opinion [200 Miss. 27, 25 So. (2d) 790] said: "The land was assessed in its entirety, and that means all of its assessable estates, by this unit assessment. This, they could and should have had corrected then, but did not. . . . The land had appeared on the assessment rolls by its definite governmental description, and had thus come under the eyes of the proper assessment and taxing authorities, and by such descriptions the land had been assessed, and sold for non-payment of the taxes. This was sufficient to carry with it the title of the entirety of the land, both above and below the surface for the reasons stated, and in harmony with our statutes and decisions."

The Suggestion of Error [200 Miss. 27, 27 So. (2d) 402] used this language: "For more than a generation, and especially since the decision in Eureka Lbr. Co. v. Terrell, Miss., 48 So. 628, it has been understood as the settled rule in this State that when a parcel of land has been assessed by a valid surface description, as for instance by the government survey, without any reservations or exceptions or limitations either in the particular assessment or elsewhere on the roll, this would be to the same effect, so far as the description is concerned, as if it were a private deed of conveyance and would include every interest in the land so described and not only the surface but every estate, horizontal or otherwise, and

whether above or below the surface, although separately owned."

And to make certain the exact basis of the rule, the Court further said: ".Here the assessment was of the appropriate surface description without any reservation or qualification or limitation appearing anywhere on the assessment rolls. It included therefore appellant's horizontal estate and inasmuch as they made no objections in writing as required by Section 9790, Code 1942, the assessment so made became unassailable as to the matter in pais upon which appellants seek now to rely. And this was the ultimate basis upon which our original opinion in this case is founded, as an unbiased examination of it will disclose."

There is no possibility of misunderstanding as to the foundation of the rule. The reference in the original opinion to the duty of the owner to have his land assessed was a mere comment upon the comparative duties and rights of the owner, the assessor and the public. It was not an effort to define an act, or omission, which would constitute the vehicle for transmission of title to land under the doctrine of estoppel. The true foundation of the rule is well grounded in reason and our jurisprudence, as is shown by the clear language above quoted and the authorities cited in the opinions. But, it would never do to say an owner is estopped to attack an invalid tax sale, or assert his taxes have been paid, simply because he failed to have his property assessed, in the one case, or, in the other case, that someone else, purposely or inadvertently, had paid his taxes for him. Such payment may be a matter of adjustment between the owner and the payor, but it is not a matter of which the State can take advantage.