484

MATHIEU, et al. *v.* CROSBY LUMBER & MFG. Co., et al.

Division B. Jan. 8, 1951.

No. 37737 (49 So. (2d) 894)

# 485

**E. R. Arrington,** for appellants.

Henley, Jones & Woodliff, for appellees.

**Roberds, P. J.**

This is a proceeding to determine title to ten acres of land. Appellants, as complainants in the bill, assert they are owners thereof as grantees of the patentee under a tax sale to the State of Mississippi. Appellees, defendants in the lower court, controvert the claim of appellants, and, by cross-bill, say they (except defendant C. H. Parsons) are the owners, with different interests, through record title and adverse possession. The chancellor dismissed the bill and sustained the cross-bill. Complainants appeal.

The first question is the validity vel non of the tax sale. Cross-complainants say the sale was illegal for the reasons (1) the description was bad; (2) that the minutes of the supervisors ordering the sale were signed

by the president after the board adjourned; (3) that the minutes fail to show the supervisors ever equalized the assessments, and (4) the minutes fail to show that notice was given the taxpayers to appear and protest the assessments. The last contention is well taken, and, therefore, we do not pass upon the other questions.

The land was sold July 7, 1930, for non-payment of taxes for the year 1929. Patent issued by the state April 28, 1947. Patentee conveyed to appellants January 27, 1949. The assessment proceedings occurred in 1928, beginning with the July meeting. Copies of all of the proceedings are in the record. The July 23rd minutes recite the board had equalized the assessments and ordered that notice be given taxpayers to appear, if they desired, at a meeting of the board to be held the first Monday in August and contest the assessments, setting out the form of the notice. However, nothing whatever appears in any subsequent minute, or outside such minutes, for that matter, showing that the notice was ever published. In Berryhill v. Johnston, 206 Miss. 41, 39 So. (2d) 530, 531, this court said, "By an unbroken line of decisions, this Court has uniformly held that █ the giving of such notice is jurisdictional and is necessary in order to confer on the board of supervisors the jurisdiction to equalize and approve the assessment rolls, and the fact that such notice was given must affirmatively appear upon the minutes of the Board of Supervisors", citing the prior Mississippi cases so holding. For the foregoing reason the tax sale was void and it did not vest in the State, or those claiming under its patent, any title to the land.

As to the record title of appellees, it is shown that on July 19, 1910, J. C. McLemore and his wife Mrs. M. O. McLemore deeded the ten acres of land to L. B. Henry. The consideration for this deed was love and affection and $10.00, Mrs. McLemore being a sister of Henry. The land is described as a tract of ten square acres in the northwest corner of SE¼ of SW¼, Section 21, T. 2, R. 3 West. Henry remained in possession of the land

some seven or eight years, when he moved therefrom to other parts. He had died before institution of this proceeding and his unknown heirs were made parties thereto and complainants took a decree pro confesso against them and they did not contest the cross-bill of appellees. The question naturally arises, under these circumstances, whether, since it was adjudged complainants had no title to the property, they had any right to contest the claim of cross-complainants—whether that right did not rest alone in the heirs of Henry, who did not contest the cross-bill, which set out a good chain of title in cross-complainants with proper affidavit attached thereto. However, we pass over those questions, and revert to the record title of appellees. It is alleged in the bill that when Henry left the property about 1918 he re-deeded it to his sister Mrs. McLemore, although there is no proof of that other than the allegation and such presumption as might arise from subsequent conveyance of the property by Mrs. McLemore. In any event, it is disclosed that on November 7, 1916, Mr. McLemore conveyed to Mrs. McLemore 220 acres of land ''less 10 acres heretofore conveyed to L. B. Henry''. On February 19, 1918, after Henry left, Mrs. McLemore conveyed all of the pine timber on the entire 220 acres, including the 10 acres in question. Thereafter there are fourteen conveyances in the asserted chain of title of appellees. Ten of these cover the ten acres; four of them purport to omit ten acres, with indefinite description thereof. Of those which include the ten acres two were executed as far back as 1919 and one in 1922. All of the four instruments which convey land ''less 10 acres'' stem from execution of a trust deed by C. H. Parsons to the Canal Bank & Trust Company of New Orleans and the foreclosure of that trust deed. Parsons testified that he undertook to omit the ten acres from his trust deed not because he did not own or claim it but because after his purchase from Graves in 1922, which included the ten acres, he had heard of a rumor about Henry's title and he did not wish

to warrant the title to the ten acres under the circumstances.. Except then for the Henry trust deed and the other three instruments resulting from the foreclosure of that trust deed every other conveyance, being fifteen in all, including the McLemore timber deed in 1918, covered the ten acres in question. This does not show a perfect record title in appellees but the chain of title thus disclosed has great bearing upon the claim of appellees of title by adverse possession.

Reverting now to the other evidence of adverse possession by appellees, it is seen the ten acre tract was a part of a larger tract—a part of the McLemore homestead property. There is evidence from which the chancellor might have concluded that the ten acres, along with the rest of the McLemore tract, were in the exclusive possession and control of the respective grantees from the time Henry left the property about 1918 to the time of the trial in 1949; that the entire tract was under one fence; that it was used as a pasture and the timber was sold and cut from the ten acres; that there were no improvements on the ten acre tract; that it grew up in bushes and timber, and the parties put it to such use as an owner would have done considering the character of the land. Photostats of the assessment rolls disclose that, although there was a purported sale to the state in 1930, the entire SE¼ of the SW¼, which would include the ten acres, beginning the year 1932 and extending to the year prior to the filing of the bill, was assessed to the respective grantees in appellees' chain of title, and such taxes were either paid or the property redeemed from sales thereof. It might be added that while Parsons said he omitted the ten acres from his trust deed to Canal Bank & Trust Company, for the reason heretofore stated, he also said that when he bought the McLemore tract in 1934, "It was shown to us; we bought it and used it like we used all other lands during the time we possessed it"; that no one ever made any claim to it during the time he owned the land from 1922 (he had bought

the timber thereon in 1919) to 1937. Other evidence of adverse title might be set out. All in all we think the evidence amply sufficient to sustain the finding of the chancellor that appellees had acquired title to the property in controversy, especially in view of the fact that this was what the cases term ''wild land''. McCaughn v. Young, 85 Miss. 277, 37 So. 839.

Affirmed.

**Arrington, C.**, took no part in the consideration of this case.