SMITH *v.* COOK.

Apr. 14, 1952.

No. 38259 (58 So. (2d) 27)

**Roach & Jones**, for appellant.

**Breed O. Mounger**, for appellee.

**Kyle, J.**

The appellant, Minnie Smith, complainant in the lower court, filed her bill in the Chancery Court of Walthall County against the appellee, James Cook, as defendant, seeking to confirm her title to a tract of land described as "all that part of the SW¼ of the NW¼, Section 25, Township 2 North, Range 10 East, lying and being North of the Fernwood & Gulf Railroad right of way," containing seven acres, more or less.

The complainant alleged in her bill of complaint that she had acquired title to the above mentioned 7-acre tract of land in 1914 by a deed of conveyance from the heirs of William Lundy, deceased, who was the owner of said land at the time of his death, and that she had been in possession of said land for a period of approximately 35 years next preceding the date of the filing of her bill of complaint. The complainant further alleged that the defendant during the latter part of the year 1949 had gone on said land and cut several valuable oak trees, and had erected a fence on a part of the land, and had committed other acts of trespass, and was attempting to assert title thereto. And the complainant in her bill asked that the defendant be enjoined from trespassing upon said land, and that she be awarded damages and the statutory penalty for the wrongful cutting of the above mentioned trees.

The defendant in his answer denied that the complainant was the owner of the above described tract of land, as alleged in her bill of complaint. And the defendant in his answer averred that he had purchased in 1933 the entire W½ of the SW¼ of the NW¼ of said Section 25. and that he had been in actual possession of the same during the last 16 years, and that he had acquired title to that part of the above described 7-acre tract lying entire W½ of the SW¼ of the NW¼ of said Section 25,

The chancellor after hearing the testimony rendered a decree in favor of the defendant as to that part of the

7-acre tract of land that lies in the W½ of the SW¼ of the NW¼ of said Section 25. And from that decree the complainant prosecutes this appeal.

The errors assigned and argued by the appellant's attorney in his brief are that the court erred in holding that the appellee had acquired title to that part of the 7-acre tract lying in the W½ of the SW¼ of the NW¼ of Section 25, and in refusing to grant to the appellant the relief prayed for in her bill of complaint.

The Fernwood & Gulf Railroad right of way traverses the SW¼ of the NW¼ of Section 25 in a southeasterly direction from a point on the north boundary line of the said SW¼ of the NW¼ of said section approximately 265 feet east of the northwest corner of said 40-acre tract to a point on the east boundary line of the said SW¼ of the NW¼ of said section approximately 687 feet south of the northeast corner of said 40-acre tract, leaving a triangular parcel of land lying north of the railroad, containing approximately seven acres, which is the land described by the complainant in her bill of complaint. The 7-acre tract as thus described is bounded on the north by lands owned by W. B. Harvey and Breed O. Mounger, and on the east by land owned by Lilly Lundy and on the south by the railroad right of way.

The complainant's proof showed that William Lundy, the complainant's father, died in 1910; that he was the owner of approximately 100 acres of land at the time of his death, and that the above mentioned 7-acre tract of land constituted a part of William Lundy's estate; that William Lundy left surviving him as his only heirs five children; and that on January 10, 1914, the complainant's brothers and sisters conveyed to the complainant all their undivided interests in said 7-acre tract, which was described in the deed of conveyance as "all that part of the SW¼ of the NW¼ of Section 25, Township 2 North, Range 1 East, lying and being North of the Fernwood and Gulf Railroad right of way, being seven acres, more or less."

The complainant thereafter owned the 7-acre tract of land as her separate part or share of the William Lundy estate. The proof showed that all of the 7-acre tract of land, except a small part thereof in the northwest corner, is open or cultivatable land. But the triangular area in the northwest corner of the 7-acre tract is rugged woodland, which has never been cleared or cultivated. There was a fence along the north line of complainant's land which separated the complainant's land from the land owned by W. B. Harvey. There was also an old fence along the west side of the cultivated portion of complainant's 7-acre tract, which ran in a northerly direction from the north line of the railroad right of way to the north line of the 7-acre tract. The plaintiff's witnesses testified that there had been a wire fence along the north boundary line of the railroad right of way for many years, which completed the inclosure of the wooded area extending westwardly to the northwest corner of the 7-acre tract, but this fence, according to the testimony had been broken down and destroyed by a railroad section crew in 1945, when the railroad company dug a ditch and erected a levee along the north side of the railroad right of way.

Even though the appellant was not able to show a perfect record title to the 7-acre tract of land prior to the death of her father, William Lundy, in 1910, there was ample evidence to prove her claim of title by adverse possession after the death of William Lundy. The appellant's proof showed that she had been in continuous, hostile, actual, notorious and exclusive possession of the 7-acre tract of land under color of title for a period of 19 years before the appellee purchased the 17-acre tract which he owned south of the railroad right of way. The cultivatable parts of the 7-acre tract had been cultivated by the appellant's tenants and members of her family during those 19 years and so far as the record shows appellant's title to the entire 7-acre tract was never disputed by anyone during those 19 years. Most of the 7-

acre tract of land was in cultivation, and appellant's possession, occupation and use of the cultivatable parts of the 7-acre tract under color of title constituted constructive possession of the entire 7-acre tract, including the wooded area in the northwest corner. Native Lumber Company v. Elmer, 117 Miss. 720, 78 So. 703. As stated by this Court in the case of Hanna v. Renfro, 32 Miss. 125, it is well settled that ▮▮▮ where a party enters into possession of land under color of title, he is not considered as a mere disseizor, and confined to the part of the premises in his actual occupancy, but his claim extends to all the lands embraced in the deed under which he claims.

In the case of Bullock v. Greer, 181 Miss. 190, 179 So. 264, the Court held that where land from which timber had been cut which the plaintiffs sought to recover in a replevin action was within the calls of their deed and they were in possession of parts of the land, that possession extended their occupancy to the boundary of the land called for in their deed, in the absence of actual, exclusive and continued adverse possession by another party. In that case the Court said that, "a person in possession of part of a tract of land, by having possession of that part, will be deemed to be in possession of all the land called for in the deed, provided no other person is occupying it". [181 Miss. 190, 179 So. 265.]

The appellee had purchased the 17-acre tract of land which he owned south of the railroad right of way from W. Asa Boyd on October 1, 1933. In the deed of conveyance which Boyd executed to Cook the land was described as: "The West ½ of Southwest ¼ of Northwest ¼ less 3 acres R O W in NE Corner, Section 25, Township 2, Range 10." Boyd had acquired title to the 17-acre tract by a deed from W. W. Ryals dated September 15, 1916. Ryals had acquired title to the land by a deed from C. C. Collins and George H. Collins dated June 6, 1912. In the deeds from the Collins brothers to Ryals and from Ryals to Boyd the land was described as all that part of the W½ of the SW¼ of the NW¼, south of Fern-

wood & Gulf Railroad right of way, Section 25, Township 2, Range 10 East, containing about 17 acres. There is no evidence in the record to indicate that Boyd, Cook's grantor, ever claimed that he owned land north of the Fernwood & Gulf Railroad right of way. Mike Futch, who testified as one of the, complainant's witnesses, testified that Boyd tried to sell his land to him in 1930, and that he walked over the land with Boyd, and that Boyd pointed out to him the north boundary of his land and stated to him that the railroad right of way was the north boundary of his land.

The appellee admitted that he had purchased all the land that he owned from Boyd, and that he had never purchased any land from anybody else. Boyd owned no land north of the railroad right of way, and consequently the appellee acquired no title to any part of the 7-acre tract of land lying north of the railroad right of way under the deed of conveyance executed by Boyd.

Appellee's claim, as set forth in his answer, that he had been in continuous, hostile, actual, notorious and exclusive possession of the small triangular parcel of land lying in the W½ of the SW¼ of the NW¼ of Section 25, north of the railroad right of way, for a period of 17 years, is refuted by the overwhelming weight of the testimony in the record that we now have before us. The appellant testified that no one had ever claimed the land against her until the appellee erected his fence only a few months before this suit was filed. Otto Lundy, who was appellant's brother, and Joe Jefferson, who made a crop with Otto Lundy in 1934, testified that they erected a fence along the north line of the railroad right of way in 1934 which extended northwestwardly to the point of intersection with the fence running east and west along the north boundary of the 7-acre tract. There was already a fence along the west edge of the cultivated field, and the fence thus erected along the north boundary of the railroad right of way effected a complete enclosure of the wooded area in the northwest corner of the ap-

pellant's 7-acre tract. Joe Jefferson testified that he pastured his cow in the oak grove that year. Sam Conerly testified that he cultivated the open land on the 7-acre tract in 1937, 1938 and 1939, and that there was a fence along the railroad right of way at that time, and that the Lundys pastured cows on the wooded knoll during those years. Lilly Lundy testified that Otto Lundy and Joe Jefferson had built the fence along the north line of the railroad right of way in 1934, and that she and other members of the family had pastured cows on the wooded knoll. Tribble Cain testified that he travelled along the railroad right of way while going to and coming from his work from 1939 to 1945 and saw the fence along the north side of the railroad right of way, and that he saw cattle pasturing inside the fence, and that Lilly Lundy was "minding them." Marshall Dexter testified that the Lundys had used the oak grove as a pasture.

Otto Lundy and Lilly Lundy testified that the fence erected by Otto Lundy and Joe Jefferson in 1934 along the north line of the railroad right of way remained there until 1945, when the railroad company dug a ditch and broke the fence down and partially covered it over with dirt, and that part of the fence could still be seen along the north line of the railroad right of way at the time of the trial. Esco Cothern, a retired railroad section foreman, testified that there was a fence along the north line of the railroad right of way in 1945 that took in "all this piece of woods on the north side of the railroad", and that the fence was covered with loose dirt and was partially destroyed when the railroad cut the ditch referred to above. Cothern inspected the wooded knoll after testifying and was later recalled to the witness stand and stated that there were parts of the old wire and posts still visible near the railroad right of way at the time of the trial.

The appellee, testifying in his own behalf, denied that there had ever been a fence along the north side of the

railroad right of way across the parcel of land which he was claiming. He denied that any cows had ever been pastured on the land during the seventeen years that had elapsed since he purchased his land from Boyd. He was asked what acts of ownership he relied upon to establish his claim of title. His answer was: "I have used it as I wanted to. It was mine. I tried to conserve the timber and take care of it. * * * I cleared the underbrush all right, and I cut a little wood there." Several other witnesses testified for the appellee, but their testimony was of a negative character and related mainly to the question as to whether there had been a fence along the north side of the railroad right of way, as claimed by the appellant's witnesses. One witness testified that so far as he knew there had never been a fence along the north side of the railroad right of way. W. B. Harvey, who had owned the adjoining tract of land north of appellant's 7-acre tract for a period of six years, said there had been no fence along the railroad right of way during that time. None of these witnesses testified to any acts of ownership or adverse occupancy of the wooded area by the appellee prior to the appellee's erection of his fence in December 1949. The appellant's attorney in his brief argues that the old field fence, which had been erected by the Lundys along the west side of their cultivated field was evidence in itself of a recognized boundary line between the appellant's land and the land claimed by the appellee. But the old field fence, which was still standing at the time of the trial, was located about 125 feet east of the line upon which the appellee had erected his fence; and there is no testimony in the record to justify the belief that the old field fence was ever regarded by anyone as a boundary line fence between the two parcels of land.

This Court has held in a long line of decisions that title to land can be acquired by adverse possession only in a case where the proof shows that the possession has been hostile, actual, open and notorious, exclusive and continuous occupancy for the statutory period. Mc-

Caughn v. Young, 85 Miss. 277, 37 So. 839; Staton v. Henry, 130 Miss. 372, 94 So. 237; A. W. Stevens Lumber Co. v. Hughes, Miss., 38 So. 769; Walker v. Polk, 208 Miss. 389, 44 So. (2d) 477.

■■ The appellee's claim of ownership of the small parcel of land in the northwest corner of the 7-acre tract lying north of the railroad right of way was based entirely upon his claim of title by adverse possession. He admittedly had no title otherwise, and the burden of proof rested upon him to establish his title by competent proof. This he failed to do.

The rule is well established in Mississippi that the findings of the chancellor on issues of fact will not be disturbed unless manifestly wrong or against the overwhelming weight of the evidence. But the rule is also well established that ■■■ if the findings of the chancellor are manifestly wrong or against the overwhelming weight of the evidence, it is the duty of this Court to reverse a decree based upon those findings. Gillis v. Smith, 114 Miss. 665, 75 So. 451; Tarver v. Lindsey, 161 Miss. 379, 137 So. 93; Teague v. Brown, 199 Miss. 262, 24 So. (2d) 726.

We think that the chancellor's finding that the appellee had proved title to the small parcel of land lying north of the railroad right of way was manifestly wrong and against the overwhelming weight of the evidence, and that the decree of the lower court should be reversed and that a decree should be entered here confirming the appellant's title to the entire 7-acre tract of land described in the bill of complaint as against all claims of the appellee.

The decree of the chancery court will therefore be reversed and a decree will be entered here in favor of the appellant confirming and quieting the appellant's title to all that part of the SW¼ of the NW¼ of Section 25, Township 2 North, Range 10 East, lying north of the Fernwood Columbia and Gulf Railroad right of way; and the cause will be remanded for further hearing by the

chancellor upon the appellant's claim for injunctive relief and for damages caused by the wrongful cutting of trees.

Reversed and decree rendered for the appellant and cause remanded.

**Roberds, Alexander, Holmes** and **Ethridge, JJ.,** concur.