STATE, et al. *v.* WILBE LUMBER CO.

Apr. 20, 1953

No. 38723          28 Adv. S. 39          64 So. 2d 327

*Matthew Harper, Jr.*, Assistant Attorney General, *Wallace & Greaves* and *M. M. Roberts*, for appellant.

350

*Watkins & Eager, Newton & Blass, Green, Green &
Cheney* and *Wells, Thomas & Wells,* for appellees.

Lee, J.

Wilbe Lumber Company, a Mississippi corporation, filed its bill of complaint on behalf of named beneficiaries against the State, the Land Commissioner, the members of the State Mineral Lease Commission, and other parties, as defendants. The title to timber and mineral rights on a large acreage of land was involved. The prayer of the bill sought (1) to cancel an alleged invalid tax title, (2) to remove such, together with other acts of certain defendants, as clouds on complainant's title, and (3) to quiet and confirm its title against all defendants. The answers of the defendants tendered issues to be resolved by the trial court. One party, C. W. Rawls, was permitted to intervene. Prior to the final decision, the timber phase was eliminated on agreement of the parties, and the sole remaining matter of controversy was the title to the mineral interests. The trial court found for the complainants, and granted a decree, awarding the relief prayed for, from which the defendants appeal.

The record is voluminous. Able and extensive briefs were filed on behalf of the several parties. However the appellants concede that the controlling points for decision are: (A) Whether or not the State's claimed title to the entire estate in such land is valid; and (B) whether or not the complainant was guilty of fraud in procuring its assessment, and is, on that account, denied the right under the maxim, "he who comes into equity must come with clean hands," to invoke the aid of a court of equity.

The material facts are as follows: Finkbine Lumber Company, an Iowa corporation, owned extensive interests in the State of Mississippi, including the land here involved, in Stone County. It had been a big operator for years, but had cut out its timber holdings. It had sought to continue operations by obtaining redwood from the west coast, but this endeavor turned out disastrously in a financial way. It owed substantial sums to several creditors and they were pressing for payment. The federal government was demanding payment of large sums on account of income taxes. Its liabilities ran into the millions. In such financial difficulty, the officers of the corporation were faced with the necessity of liquidating its affairs, but it was realized that proceedings equivalent to receivership or bankruptcy would be attended with heavy expenses. Moreover it was found that, by setting up other corporations, a more favorable situation would exist insofar as the payment of income taxes was concerned. It therefore caused several other corporations to be organized for the purpose of taking over and liquidating its affairs and paying its debts. The two which came under scrutiny here are Stone Realty, Inc. and Wilbe Lumber Company, both incorporated under the laws of this state. The capital stock of Wilbe was.$1,000.00 and it was paid in by persons not connected with the management of Finkbine Lumber Company.

By deed dated December 28, 1928, Finkbine conveyed to Stone, the land here involved, but expressly reserved all minerals, all timber thereon for the next 25 years, and certain other rights not necessary to mention here.

By deed of date of July 1, 1929, Finkbine conveyed to Wilbe all minerals under these lands, all timber thereon for the next 25 years, and certain other rights. The subject matter of this conveyance was the property and rights which had been reserved in the deed to Stone.

On April 19, 1930, Wilbe rendered to the assessor of Stone County a list of its timber and mineral rights for

assessment to it. However, when he listed it on the roll as an assessment of Wilbe, the assessor styled it ''Timber & Mineral Leases.'' At that time, no mineral leases were outstanding.

Stone was assessed with this land for 1930. The assessor placed this assessment on the pages of the roll immediately preceding the assessment to Wilbe.

The nature of the assessments against Stone and Wilbe for 1930-31 was brought directly to the attention of the board of supervisors of Stone County on the objection of Stone to the valuation per acre of the assessment against it, and the board on August 7, 1930, adopted the following order. ''The matter of the objections of Jackson Realty, Inc., and Stone Realty, Inc., to the valuations as now shown upon the Land Assessment Roll of Stone County for the years 1930 and 1931 coming on for consideration and it appearing that the timber and mineral rights on a large list of the lands owned by the assessed to said Companies are assessed to another Company at a valuation of fifty cents per acre; and after considerations it is ordered that the Clerk and Assessor be and they are hereby directed to change said assessment Roll so as to show all lands of said companies now assessed at $3.50 at $3.00 per acre where the timber and mineral rights on the same lands are assessed at fifty cents per acre and all lands now assessed at $5.00 changed to $4.50 where there is timber and mineral rights assessed on the same lands at fifty cents per acre provided no changes are to be made in the valuation as now shown upon any lands assessed to said companies where there are no timber and mineral rights assessed to any other person or company.''

Neither Stone nor Wilbe paid the taxes on their respective assessments for the year 1930; and on April 6, 1931, substantially all of the properties covered by these two assessments were sold to the state. However on February 8, 1932, Wilbe, through the chancery clerk, redeemed its timber and mineral rights from that sale.

The assessor prepared the 1932 roll and assessed Wilbe with the mineral rights and timber at fifty cents an acre. That assessment was raised by the board of supervisors to $2.00 per acre, but Wilbe appealed to the Circuit Court of Stone County and that court reversed the order of the board of supervisors and reduced the assessment to fifty cents per acre, as originally assessed. On appeal, that judgment was affirmed per curiam by this Court. Wilbe Lbr. Co. v. Board of Supervisors of Stone County, 154 So. 544.

In the certificate of H. W. McHenry, chancery clerk and clerk of the board of supervisors of Stone County, of date of April 3, 1934, to the list of lands sold by the sheriff and tax collector on April 6, 1931, is found this specific provision: ''The property conveyed in this sale assessed to Stone Realty, Inc., is land in fee subject to reservations (timber-mineral rights held by Wilbe Lumber Company).''

Wilbe paid the taxes on the timber and minerals from 1932 through 1945; and when Chapter 409, Laws 1946, was enacted, it paid a commutation tax of $3,883.68 for non-productive minerals which had been separated from the surface.

Appellants contend that the right to maintain this action is controlled by Chapter 196, Laws 1934, Section 717, Code 1942, and that it was necessary that it be brought within two years from the passage of that Act.

However no plea to that effect was interposed. Besides, Wilbe remained in possession of these mineral rights, continued to pay the taxes, and suffered no ouster whatever. See Russell Investment Corporation v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102, where this Court said: ''And in order that there be no doubt as to what we here hold, let it be understood that whenever it is sufficiently shown in any case that the former owner of land sold to the state for taxes has remained in possession thereof after the sale, either in person or by tenant, then and in such event Chapter 196, Laws of 1934,

shall have no application, and that the claim of title and possession of such former owner can be defeated only by proof of a valid assessment, levy and sale of the land for taxes both under the statutes as well as the Constitution, coupled with a failure to redeem from such sale within the time allowed by law.'' See also Bruce v. Smallwood, 188 Miss. 771, 196 So. 227, which cited Russell Inv. Corp. v. Russell, supra, and held that until the owner's ''possession is invaded or disturbed by the purchaser at the tax sale, or by a subsequent vendee of such purchaser, the statute of limitation prescribed by the statute for commencing an action does not begin to run.'' It was said in Cook v. Farley, 195 Miss. 638, 15 So. 2d 352, that ''Where there has been a severance of the surface and mineral estates, the authorities uniformly hold that adverse possession must consist of actually taking possession of the minerals by drilling wells or digging mines and capturing or taking possession of the minerals, either by producing and removing them or by holding them capped in a completed well to the exclusion of the mineral title-holder and the world, for the statutory period of adverse possession.'' See also Levy v. Campbell, 200 Miss. 721, 28 So. 2d 224.

After the Mineral Lease Commission undertook to lease this acreage for minerals, the appellee, in due course, instituted its suit; and it had the benefit of Chapter 309, Laws 1940, Section 1315-1322, Code 1942.

Appellants contend that the duty of a proper assessment devolves upon both the owner and the assessor; that the assessment of Stone was regular in every way, without limitation, and, upon its approval by the board of supervisors, a lien attached upon all of the realty on, above and under the surface; that no appeal was taken and the assessment became final; that the assessment roll cannot be reformed; that the list of lands sold to the State on April 6, 1931, with the certificate of the tax collector that they were sold ''pursuant to the requirements

of law" conveyed a perfect title to the lands assessed to Stone.

When the law is applied to the facts in this case, the answer to these contentions is apparent.

▇▇▇ Chapter 171, Laws 1930, Section 3146, Code 1930, provided for the separate assessment of separate interests like minerals and timber, to the respective owners thereof; and it was made the duty of the assessor to enter such assessments "upon the next succeeding line or lines of the roll following the assessment of the surface owner." However, it was testified by the secretary of the State Tax Commission that the rolls in this case were furnished to the assessor prior to the enactment of the above chapter; and of course, no space was set aside therein for the assessment of separate interests. While no reservation appeared in the assessment of Stone, the owner of the mineral rights and timber, Wilbe, rendered its assessment for those interests. The assessor placed that assessment on the roll immediately following that of Stone. The State had failed to furnish a roll which would be in exact compliance with the above named chapter. Thus both the taxpayer and the assessor did the best they could to effect the separate assessment of the timber and mineral interests. The Board of Supervisors, in its consideration of the roll, examined the assessments of these two taxpayers and was fully aware that the assessment of Stone did not include the mineral rights and timber, but that the assessment of Wilbe did include such interests because, by its order, it reduced Stone's assessment from $3.50 to $3.00 an acre in some instances and from $5.00 to $4.50 an acre in other instances. The board's justification therefor was that the timber and mineral rights were already assessed to another taxpayer at fifty cents an acre. And, after the sale for taxes, Wilbe redeemed its interests therefrom within the time allowed by law.

In McNatt v. Hyman, 204 Miss. 824, 38 So. 2d 107, McNatt gave the assessor full information as to his own-

ership of the minerals and requested a separate assessment thereof; but his request was declined because "the board of supervisors didn't assess the minerals separate from the land." Thereupon he conferred with the tax collector who entered on the line the letters "M. R.", which the deputy collector testified was understood to mean mineral rights. McNatt paid all of the taxes on his interests for the years involved and, so, the taxes had been paid when the sales were made on April 3, 1944, and April 2, 1945. This Court held that it was not incumbent on McNatt to mandamus the board to compel an approval of the assessment by the tax collector, but that he "did all that was required of him." The opinion, in observing that a tax-purchaser "takes the title subject to all its infirmities. Roebuck v. Bailey, 176 Miss. 234, 166 So. 358; 51 Am. Jur., Taxation, Section 1061," further said: "Suppose, in this case, the minerals had sold to the State. Surely the Court would have held, under the state of this record and the all-important fact that the county and state had been paid the tax, that the State would not have gotten title to the property." The last quotation blocks the road to appellant's contention.

Also in Stern v. Parker, 200 Miss. 27, 25 So. 2d 787, it was recognized that "there may be more than one estate in the same lands, oil and minerals beneath the surface, the surface, and timber on the surface, as instances." The reservation there involved created "two estates in the described land, the surface, and the oils, minerals and clay, with right of entry." And it was held that "both estates are subject to assessment, separately, or as a unit, as the case may be." But those estates were not separately assessed. The appellants there failed to have their sub-surface interest assessed; and it was pointed out that such "omission was their fault, and they, and not the state or its patentee, should suffer." Hence, the mineral interest passed under the

tax sale of the fee. See also Hendrix v. Foote, 205 Miss. 1, 38 So. 2d 111.

As heretofore pointed out, there was an assessment of this land against Stone, and following that, an assessment of the timber and mineral rights to Wilbe. And, as was said by this Court in State v. Cummings, et al., 206 Miss. 630, 40 So. 2d 587, "It would never do to say that an assessment of the surface necessarily covers the fee when the same roll shows that the minerals in place, or the royalty interest in producing properties, have been separately assessed. If so, thousands of under-surface owners, whose minerals have been separately assessed and paid upon, would lose their properties under sales of surface assessments."

■■■ On the question of whether or not the acts and conduct hereinbefore detailed, as the result of which this land was divided into surface and timber and mineral interests and assessments were made accordingly, constituted fraud, the trial judge held that it did not. There was no proof of false representation, deceit, concealment, coercion, or any illegal act. After the two corporations had acquired their separate interests, the law for separate assessments thereof was enacted. They simply took advantage of an existing law.

■■■ Finkbine was, of course, under the duty to pay its debts, and it could create preferences among its creditors. Arthur v. Bank, etc., 9 S. & M. 394; reaffirmed in Love Mfg. Co. v. Queen City Mfg. Co., 74 Miss. 290, 20 So. 146. Its dissolution did not extinguish its debts. Section 5354, Code 1942. See also Bates v. Miss. Industrial Gas Co., 173 Miss. 361, 161 So. 133.

Wilbe, being under the obligation to pay the debts of Finkbine, was required to preserve, so far as it could, the property intrusted to its care, and to carry out its obligation. There was no proof either that the surface rights were valueless or that the timber and mineral rights were valuable at the time. The separate assess-

ment of the separate interests was not only not unlawful, but was expressly provided for by law.

If the plan was designed for the purpose of evading and avoiding taxes instead of for the purpose of liquidating the affairs of Finkbine and paying its debts, this would not amount to a fraud that would invalidate the assessment. 51 Am. Jur., Taxation, Section 10, page 43-44, says: ''The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether to avoid them, by means which the law permits, cannot be doubted. A taxpayer may resort to any legal method available to him to diminish the amount of his tax liability, and the state cannot complain, when a taxpayer resorts to a legal method available to him to compute his tax liability, that the result is more beneficial to the taxpayer than was intended. * * * The very meaning of a line in the law is that one intentionally may go as close to it as he can, if he does not pass it. If a device to avoid payment of a tax is carried out by the means of legal forms, it is subject to no legal censure. *The motive of a taxpayer to escape payment of a tax will not make unlawful what the law allows. It is not fraud to do what one has a legal right to do.''* (Emphasis supplied.) See also Nicola v. U. S., CCA 3, 72 Fed. 2d 780.

The title of the intervenor, the State's patentee, depends upon the State's title; and since this has failed, his title must fail. In addition thereto, he did not acquire title to the minerals by adverse possession.

From what has been said, it follows that the decree of the learned chancellor was, in all respects, sustained by the evidence, and it should be, and is, affirmed.

Affirmed.

*Roberds, P. J.*, and *Kyle, Arrington* and *Ethridge, JJ.*, concur.