WHITE, et al. *v.* MERCHANTS AND PLANTERS BANK, et al.

No. 40252 October 22, 1956 90 So. 2d 11

*Arrington & Arrington,* Hazlehurst; *Crisler, Crisler & Bowling,* Jackson, for appellants.

*Henley, Jones & Woodliff,* Hazlehurst, for appellees.

LEE, J.

Lutie White and others filed their bill of complaint against Merchants & Planters Bank and others. The claim was that the complainants are the owners of an undivided four-fifths interest in all oil, gas and other minerals in and to 120 acres of land, as described therein, and they sought to cancel all right, title and interest of the defendants, except Gulf Refining Company, in and to the said four-fifths mineral interest. Succinctly stated, the pleadings set up complainants' claim of title through inheritance from B. W. White, and the defendants claim their title through a tax sale, the attempted confirmation thereof, adverse possession, estoppel and laches.

On November 9, 1927, B. W. White, the owner of this land, conveyed the same to W. B. Purser. The deed contained the following reservations: ''All mineral rights of every nature and description that may now exist in and to the lands above described are specially reserved and not to be included in this conveyance. And all gas or oil rights that do or may exist in connection with the land here conveyed are specially reserved. The right for ingress and egress is hereby retained.''

Five days later, on November 14, 1927, W. B. Purser and wife executed a deed of trust thereon to Gillis Cato, Trustee for Merchants & Planters Bank. There was no mention of the reservation of mineral rights.

The land was assessed to W. B. Purser for the years 1928-9, but there was no mention of mineral rights.

On February 26, 1929, W. B. Purser and wife executed a deed of trust to Gillis Cato, Trustee for Merchants & Planters Bank on this land. There was no mention of mineral rights in this conveyance.

On January 1, 1930, W. B. Purser and wife executed a deed of trust to Gillis Cato, Trustee for Merchants & Planters Bank, on this and other lands. There was no mention of mineral rights in this conveyance.

On July 7, 1930, this land was sold for the taxes of 1929 and was purchased by J. S. Reno.

On July 19, 1930, W. B. Purser and wife executed a deed of trust to Gillis Cato, Trustee for J. S. Reno Co., Inc., on this and other lands. It was stated that it was a renewal of a deed of trust of date of January 1, 1930, to Merchants and Planters Bank. The lien expressly covered any amount necessary to be paid for taxes or to protect the title to the property. The deed of trust, dated July 19, 1930, was foreclosed, and on October 24, 1931, Gillis Cato, Trustee, conveyed the land to J. S. Reno Company. On October 26, 1931, the J. S. Reno Company, by W. L. Reno, President, and J. S. Reno, Secretary, executed to Gillis Cato, Trustee for Merchants & Planters Bank, a deed of trust on this land. The J. S. Reno Company, by J. S. Reno, President, on March 13, 1933, executed a deed of trust on this land to G. Cato, Trustee for Merchants & Planters Bank. On June 26, 1934, J. S. Reno Company, by J. S. Reno, President, quitclaimed the land to Merchants and Planters Bank. There was no mention of mineral rights in any of these conveyances.

On August 19, 1942, the Merchants & Planters Bank, through its President, Newton Ellis, filed a bill of complaint for confirmation of its title to this land. There was a deraignment, showing title out of the United States and by mesne conveyances to B. W. White, and the conveyance by B. W. White to W. B. Purser in which all mineral rights of every nature and description were reserved, and the subsequent conveyances. ''Lutie Ware, a resident citizen of the State of Georgia, with post office at Columbus in the County of Muscogee'', and Hilda White, Elizabeth White, Jasper White and Mrs. J. V. Mohon, residents of Hinds County, actually the daugh-

ters, son and widow of B. W. White, who died in 1936, and others were made defendants. But neither W. B. Purser, owner of the land at the time of the tax sale, nor his heirs, if he was dead, were made defendants. Profert by mere copies was made of the deed from B. W. White to W. B. Purser, the assessment roll for 1928-9, and the tax collector's deed. The returns showed personal service on Hilda White, Elizabeth White, and Mrs. J. V. Mohon. Jasper White was not found but he subsequently executed a quitclaim deed to the bank. There was process for Lutie White and other defendants published on August 20, 27, and September 3, 1942. Also deraigned in the bill was a quitclaim deed, dated August 21, 1942, from J. S. Reno to the Merchants & Planters Bank for this land, although the bill had been filed August 19th and the first publication had been made on August 20th. Following a decree pro confesso against all defendants, and the execution by Jasper White of his quitclaim, the final decree confirmed the bank's title, subject to a certain mineral lease, and cancelled the claims of all defendants.

The above-mentioned decree was not recorded in the final record book. A transcript of the minutes of the board of supervisors of Copiah County pertaining to the 1928-9 realty assessment roll was introduced in evidence. The records showed that taxes were assessed to the B. W. White estate (lease) for the mineral rights on this land, and that same were paid in 1941 and 1942. In 1954 Lutie White, Hilda White and Mrs. Elizabeth White Fowler applied for exemption under future ad valorem taxation on mineral rights under the 1946 laws, each paying $1.92. Lutie White testified that she has lived in Columbus, Georgia, ever since 1937, and that she did not receive any notice of the confirmation suit which was filed on August 19, 1942. Newton Ellis, president of the bank, testified that the bank never tried to drill an oil

well on the land, although its lessee, while merely testing for oil, drilled what turned out to be a water well.

■■■ At the conclusion of the trial, the learned chancellor prepared and delivered a written opinion in which he held that W. B. Purser, by reason of his deed from B. W. White, in which the minerals were severed from the surface, acquired only the surface; that at no time did he claim to own the minerals; and that in his deed of trust to the bank and to the J. S. Reno Company, he conveyed only his title to the surface. As authority for this conclusion, he cited Cook v. Farley, 195 Miss. 638, 15 So. 2d 352.

■■■ Following the case of Mathieu v. Crosby Lumber & Mfg. Company, 210 Miss. 484, 49 So. 2d 894, which held that the notice to taxpayers to appear and object to assessments is jurisdictional, and that it must affirmatively appear on the minutes of the board of supervisors that such notice was given, otherwise a tax sale under such an assessment is void, the chancellor found that the law was not compiled with, and that the tax sale was void. The sale in that instance occurred in Copiah County at the same time, July 7, 1930, and for default in the payment of taxes for the same year, 1929, as the tax sale involved in the present case.

■■■ The chancellor assigned several reasons for holding void the 1942 confirmation suit: (1) Sections 1314 and 1323, Code of 1942, as to special process was not complied with. (2) It was charged that Lutie White was residing in the State of Georgia, but the bill failed to charge that she was a nonresident of the State of Mississippi, a prerequisite to valid process against her under Rice v. McMullen, 207 Miss. 706, 43 So. 2d 195. (3) W. B. Purser was the owner of title at the time of the tax sale, and the confirmation suit and the decree were void because neither Purser, if living, nor his heirs, if he was dead, were made parties. The opinion cited Smith v. Denny and Company, 90 Miss. 434, 43 So. 479; Paepcke-

Leich Lbr. Company v. Savage, 137 Miss. 11, 101 So. 709; Dorsey v. Sullivan, 199 Miss. 602, 24 So. 2d 852.

The final proposition dealt with by the court was whether, under Sections 709, 710, 711, and 716, Code of 1942, the appellees had obtained title by adverse possession. The court reasoned that, if the tax sale had been valid, there would have been a merger of both the surface and the minerals; that, although void, the deed did sufficiently describe the land, and amounted to color of title under Walker v. Polk, 208 Miss. 389, 44 So. 2d 477 and Carney v. Anderson, 214 Miss. 504, 58 So. 2d 13; and that this color of title, coupled with actual possession of part of the land, constituted constructive possession of the whole under Native Lumber Company v. Elmer, 117 Miss. 720, 78 So. 703; Hamner v. Yazoo Delta Lumber Company, 100 Miss. 349, 56 So. 466; Page v. O'Neal, 207 Miss. 350, 42 So. 2d 391; Walker v. Polk, supra; and Smith v. Cook, 213 Miss. 876, 58 So. 2d 27.

The final decree dismissed the bill of complaint with prejudice as to all defendants, except as to four against whom a decree pro confesso had been taken; and the complainants appeal.

The briefs, pro and con, have cited all of the cases which the chancellor referred to in his opinion, as well as many others.

It is true that the appellees and their predecessors in title have had possession of the surface of this land since the foreclosure of the deed of trust from W. B. Purser and wife to Gillis Cato, Trustee, on October 24, 1931. Such possession consisted of farming, pasturing, paying taxes on, executing oil and gas leases, and other acts of ownership of which the surface was susceptible. However, President Newton Ellis admitted that the bank had never tried to drill for or capture oil or gas, though one of its lessees in simply testing for oil or gas, struck a vein of water, which is still flowing. In other words, no actual possession was ever taken of the oil, gas or other

minerals, and no entry was ever made upon the land for the purpose of reducing such minerals to possession.

The minerals were severed when B. W. White sold the land to W. B. Purser. Only five days later, the bank took a deed of trust from W. B. Purser. The slightest inquiry would have disclosed to the bank that the mineral rights had been severed and had been reserved by the grantor. It is incredible that the bank made no inquiry whatever concerning property on which it made a loan. It is obvious that the bank should have acquired actual knowledge of this fact.

Now, "Possession of the surface under color of title gives no possession of antecedently severed subsurface interests or timber." 2 C.J.S., Adverse Possession, Section 184 (2), p. 777. See also 1 Am. Jur., Adverse Possession, Section 119, p. 858.

■■ ■ "Possession of the surface by a subsequent grantee thereof is not adverse possession as to mineral rights previously severed, even though the instrument constituting the surface owner's color of title purports to convey the whole property, where such grantee has actual or constructive notice of the severance; as in the case of the original surface owner, whatever possession such grantee has of the mineral interests is as trustee for the owner thereof." 58 C.J.S., Mines and Minerals, Section 135, p. 224.

■■ ■ In our own case of Cook v. Farley, supra, the opinion says in part: "In Glassmire on Oil and Gas, Page 135, Sec. 39, it is said that: 'Where a severance of the legal estate of oil and gas has been created, separate and apart from the land, adverse possession of the land is not adverse to such separate mineral estate. But if the surface owner exercises control over the mineral rights, by actual operations, he may acquire title thereto by adverse possession.' Also in Thornton on Oil and Gas, Volume 2, Page 775, Sec. 466, it is said that: 'Although the land-owner has held adverse possession of the surface of the

land, under a deed purporting to convey the entire title and interest in the land for a number of years ... paying taxes and the like, such possession is not adverse to the reservation of the minerals made in a deed of his remote grantor.' See also, 1 R. C. L. 738, Sec. 57, and Summers Oil and Gas, Permanent Edition, vol. 1, page 354, Sec. 138. Any instrument constituting mere color of title is wholly ineffectual as against the record, legal title in the absence of adverse possession of the property claimed for the period required by law. Where there has been a severance of the surface and mineral estates, the authorities uniformly hold that adverse possession must consist of actually taking possession of the minerals by drilling wells or digging mines and capturing or taking possession of the minerals, either by producing and removing them or by holding them capped in a completed well to the exclusion of the mineral title-holder and the world, for the statutory period of adverse possession.'' See also Levy v. Campbell, 200 Miss. 721, 28 So. 2d 224; State v. Wilbe Lumber Company, 217 Miss. 346, 64 So. 2d 327.

In Native Lumber Company v. Elmer, supra, Deveraux and his family entered into possession of the land under a written claim, which constituted color of title, and it was said that: ''The actual possession of this land under color of title of the whole was constructive possession of the entire 400 acres.'' To the same effect are Hamner v. Yazoo Delta Lumber Company, supra; Evans v. Shows, 180 Miss. 518, 177 So. 786; Page v. O'Neal, supra; Smith v. Cook, supra; and many other cases. But in those cases, adverse possession related to the surface of the land. Subsurface rights were not involved. Consequently that line of cases is of little or no value here.

 Although the basis in the chancellor's opinion for his decision in favor of the appellees appeared to be adverse possession under color of title, he did say: ''Most unfortunately, complainants have been guilty of laches, in my opinion, and cannot now maintain their suit, and

decree for defendants will be awarded.'' This Court in a number of cases has held that no period of time short of the bar of the statute of limitations can be used as supporting laches, which will constitute an equitable bar to the bringing of a suit. Waldrop v. Whittington, 213 Miss. 567, 57 So. 2d 298, and authorities there cited.

Laches are not mere delay, but delay that works a disadvantage to another. Dampier v. Polk, 214 Miss. 65, 58 So. 2d 44; Gulf Refining Company v. Travis, 201 Miss. 336, 29 So. 2d 100, 30 So. 2d 398; Comans v. Tapley, 101 Miss. 203, 57 So. 567.

There is no evidence that anyone relied on the silence, act or representation of the heirs of B. W. White in purchasing the minerals. The bank executed an oil and gas lease on May 30, 1942, even before the confirmation suit was filed. No one except Sol Sherman testified to reliance on the decree of confirmation. However, he paid a part of the attorney fee, and, to that extent, was an interested party. The appellees placed much reliance on the fact that the Whites received a letter concerning a requested quitclaim deed, and, on that account, they must have known that the bank was claiming the minerals. But a mere claim was not sufficient. The flag had to be unfurled. They refused to execute a quitclaim deed. There was no attempt to capture and deprive them of their minerals. Thus, until there was an effort to deprive them of their minerals, the appellants ''could let the land lie unoccupied and idle fifty years or more, and because of that fact alone neither limitations nor laches would affect them,'' as was said in Taylor v. Turner, 193 Miss. 410, 9 So. 2d 644. For like reasons, the contention with reference to estoppel is also untenable.

The trial court was manifestly correct in holding that W. B. Purser conveyed the surface only, that the tax sale was void; and that the confirmation suit was a nullity.

However, for the reasons stated above, we think that the chancellor was in error in holding that the appellees

had acquired title to these minerals by adverse possession, and that the appellants had lost their interest in the minerals on account of laches.

From which it follows that the decree of the court must be reversed, and a decree will be entered here for the appellants, cancelling all right, title and interest of all appellees, to an undivided four-fifths interest in and to all oil, gas and other minerals in, on or under the said lands as a cloud upon appellants' title.

Reversed and decree here for the appellants.

*Roberds, P. J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.